FREDERICK GARSIDE *vs.* THE LADD WATCH CASE COMPANY.

When, at the trial of ·a case before a jury, witnesses for the plaintiff and the defendant gave conflicting evidence as to certain structures, and members of the jury, without knowledge or consent of either party to the action or of his attorney, themselves pending the trial visited and examined the structures, a new trial will be granted on account of misconduct on the part of the jurymen.

Whether affidavits of the jurors themselves as to this visit and examination could be received, in order to impugn the verdict, is not decided.

DEFENDANT'S petition for a new trial.

*May* 7, 1892. TILLINGHAST, J. This is an action for trespass on the case, to recover damages for the negligence of the defendant corporation in allowing a certain trap-door in the landing of a stairway on the premises occupied in part by the defendant, which said trap-door was used by and under the sole control of the said defendant, to remain open and unguarded, whereby and by reason whereof the plaintiff, while using said stairway, as he lawfully might do, in going to his work in the building where said stairway was located, and while using due care, fell into the hole or opening caused by said trap-door being left open, and was thereby seriously injured. The facts in the case, in so far as the same are ne-

cessary to the decision of this petition, are as follows, namely : Before the case was opened to the jury, the defendant's counsel moved the court that the jury be permitted to take a view of the premises where the accident occurred; but this motion, being objected to by the counsel for the plaintiff, was refused.

During the trial there was much conflicting testimony regarding the structure, size, and exact location of the trap-door in question. Dr. Palmer, one of the principal witnesses for the plaintiff, testified that he examined the premises a day or two after the happening of the accident; that he found an entry which was very dark, and also a landing which was very dark; that he could not find any trap-door by feeling with his hands, but by lighting a match he found a trap that was very nicely fitted into the floor by a lip of steel that went around it; that he saw the dimensions of the trap and saw that the plaintiff could have fallen in with one foot upon the firm landing, and the other going down into the pit; that said narrow lip was secured, on the edge, to the trap, and then the trap fitted into the space and supported by this projecting edge, so that walking on it one would never know there was any trap there; that the opening was about two feet long and about a foot wide. Upon being recalled on the second day of the trial, he further testified that he had just visited the premises in question again, in company with the plaintiff; that he found a trap-door 12 by 20 inches in size ; that there were two hinges near the end of it, which, owing to the darkness, he had previously mistaken for a "lip;" that he had also learned an additional fact, namely, that there was a double trap-door, a trap-door within a trap-door, and that the entire landing lifts up, and in that landing there is a second trap-door; that by falling into that second trap he could account for the plaintiff's injuries, namely that his body did not have a chance to spread out, but went into a cramped place, and the body was thus cramped.

The defendant called a number of witnesses, who testified that there was no trap-door within a trap-door at said place and never had been; that the whole platform constituted the trap-door, that it was on hinges, and, when open, turns up against the partition the whole width of the stairway; that it was 3 feet 2 inches long and 22 inches wide. After this conflict in the testimony had appeared,

the counsel for the *defendant* requested that in consequence thereof a view of the premises be taken by the jury, in order that they might determine for themselves regarding the question in dispute. This motion was also denied by the court. The jury found a verdict for the plaintiff in the sum of $8,000.

The defendant now petitions for a new trial on the following grounds, viz. : —

*First.* That the verdict was against the evidence and the weight thereof.

*Second.* That the damages awarded by the jury were excessive.

*Third.* Because certain members of the jury, before whom said cause was tried, were guilty of misconduct in this, that, during the progress of said trial and without the consent of the court, and without the knowledge and consent of the petitioner or its attorneys, they did take an unauthorized view of the premises where the accident occurred, concerning which said action was brought and prosecuted.

*Fourth.* Because certain members of said jury, during the progress of said trial, did take an unauthorized view of the premises where the accident occurred, concerning which said action was brought and prosecuted, without the knowledge or consent of the petitioner or its attorneys, and under such circumstances as to be calculated to lead a jury into error in the determination of said cause.

*Fifth.* Because, during the progress of said trial, certain members of said jury did take an unauthorized view of the premises where the accident occurred, concerning which said action was brought and prosecuted, without the knowledge or consent of the petitioner or its attorneys, and were thereby misled in matters relating to the evidence in said cause.

In support of the *third*, *fourth*, and *fifth* grounds for a new trial above set forth, all of which may properly be considered together, the defendant offered in evidence a number of affidavits to the effect that, on the last day of the trial of said case to the jury, four or five of the jurors engaged in said trial visited the place where the accident happened, and examined the landing and trap-door in question. These affidavits were made by persons in the employ of the defendant corporation, each of whom testifies to having seen

said jurors making said examination. The defendant also offered the affidavits of three of the jurors who sat in said case to the effect that the affiants and two other members of the jury, making five in all, visited the premises where the accident occurred, during said trial, of their own motion, and without the knowledge or consent of either counsel or parties on either side; that the sky was overcast with clouds at the time they visited the premises; that the entry-way was quite dark; that at that time they thought they discovered evidence of there being or having been a trap-door within a trap-door in the landing at the head of the stairs, as testified to by Dr. Palmer in behalf of the plaintiff, and contrary to the testimony given by a number of defendant's witnesses; that two of said jurors have visited said premises since the trial of said case, on a clear day, and carefully examined the landing at the head of the stairs, and find that they were mistaken in their impressions obtained at the time they examined the same during the course of the trial; and that there evidently has been but one trap-door; and that there are no indications of there being or ever having been a trap-door within a trap-door in said landing. It further appears by the affidavit of George S. Ladd, the superintendent and vice-president of the defendant corporation, and by that of Francis Colwell, Esquire, and Walter H. Barney, Esquire, attorneys for the defendant, that at the time of the trial no one of the officers of said company, nor either of its attorneys, was aware that any member of the jury that tried said case had been to view the premises where the accident occurred, which was the subject of the suit, until after the trial was over, and that such visit was wholly without the knowledge or consent of the defendant or either of its attorneys.

The plaintiff objected to the introduction of the affidavits of the jurors above referred to, on the ground that jurors are not allowed to impeach their own verdict. The court admitted these affidavits *de bene.*

In *Tucker* v. *The Town Council of South Kingstown*, 5 R. I. 558, 560, it was held by this court that the affidavits of the jurymen as to what took place in the jury room, or as to the grounds upon which they found their verdict, must be rejected; "a rule of policy, well settled both in England and in this country, exclud-

ing, for the security of verdicts, this mode of impeaching them." The same doctrine was affirmed by the court in the recent case of *Luft* v. *Lingane, ante,* p. 420. Neither of these cases, however, goes to the extent of holding that misconduct of jurors which takes place during a trial, and before the case is finally committed to the jury, may not be shown by the jurors themselves. The general rule undoubtedly is, that affidavits of jurors, while received to sustain or explain their verdict, are inadmissible to impeach or overthrow it. *Allison* v. *The People,* 45 Ill. 37; *Knowlton* v. *McMahon,* 13 Minn. 386; *Shaw* v. *Fisk,* 21 Wisc. 373. But while this is so, there are numerous authorities to the effect that, as stated by Cole., J., in *Wright* v. *Illinois and Mississippi Telegraph Co.* 20 Iowa, 195, 210, "affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself; as that a juror was improperly approached by a party, his agent or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average, or by lot, game of chance, or other artifice or improper manner: but that such affidavit, to avoid the verdict, may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court, the statements of the witness, or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matters resting alone in the juror's breast." In Massachusetts, overt acts may be proved, by the testimony of jurors, to impeach their verdict. *Grinnell* v. *Phillips,* 1 Mass. 530, 3 Graham & Waterman on New Trials, 1434. In Ohio it has been. held that, where there is evidence *aliunde* of misconduct of the jury, their own testimony may be received, not only to limit and explain, but also to enlarge and aggravate, such misconduct. *Farrer* v. *The State of Ohio,* 2 Ohio St. 54.

In *Perry* v. *Bailey,* 12 Kans. 539, Brewer, J., in delivering the opinion of the court, adopts the rule laid down in Iowa, as above quoted. See, also, *Philips* v. *Fowler,* Comyns Rep. 525;

*Aylette* v. *Jewell*, 2 W. Black. 1299; *Clark* v. *Stevenson*, 2 W. Black. 803; *Straker* v. *Graham*, 4 M. & W. 721; *Burgess* v. *Langley*, 5 M. & G. 722; *Rex* v. *Woodfall*, 5 Burr. 2661; *Warner* v. *Robinson*, 1 Root, 194; *Cochran* v. *Street*, 1 Wash. Va. 79; *Reynolds* v. *Champlain Transportation Co.* 9 How. Pr. 7; *Heffron* v. *Gallupe*, 55 Me. 563, 566. But we need not decide in the present case whether the affidavits of the jurors, offered in evidence, as to what took place outside the jury room, are admissible, for there is sufficient proof of their misconduct without said affidavits. The undisputed fact, then, which appears in proof outside of the affidavits of the jurors, is, that several of said jurors, without the knowledge or consent of the court or of either party to the suit, visited and examined the premises where the accident happened. This visit and examination were made after a good deal of the conflicting testimony above referred to, as to whether there was but one trap-door in the landing where the accident happened, or whether there were two trap-doors, the one within the other, at said place, had been put in. It is evident that, in view of this conflicting testimony, the jurors were curious or anxious, perhaps both, to determine for themselves, by ocular demonstration, whether or not there was in fact a trap-door within a trap-door at said place, and what was the size and condition of the same, and that this was the main purpose of those who made the examination. It is natural to infer, also, that if, upon making such examination, they become satisfied that the plaintiff's witness was correct in his testimony upon that point, and that the defendant's witnesses were mistaken or perhaps falsifying upon said point, it would strongly tend in their minds to discredit the defendant's witnesses, not only as to their testimony upon this branch of the case, but also upon other branches as well, and thereby prejudice the defendant's side of the case. So that, even though, as contended by the counsel for the plaintiff, it is practically of little or no importance whether there was in *fact* a trap-door within a trap-door, as testified to by the plaintiff's witness, or only a single trap-door, as testified to by the defendant's witnesses, yet, as this fact was in dispute, the attempt to determine it for themselves by the jurors who viewed the premises, and in all probability for the rest of the panel also, by outside evidence, was certainly of a character calculated to, and

probably did, affect the credibility of the witnesses called by the defendant. The conduct of the jurors in thus obtaining evidence for themselves, which it may fairly be inferred affected to a greater or less degree their verdict in the case, is wholly inexcusable and highly reprehensible. They were sworn to give a true verdict in the case, according to law and the evidence given them. This means, as everybody knows, that the case is to be tried and decided solely upon the law and the evidence as given in the court, or under its immediate direction, and " to permit them to take into consideration evidence not produced upon the trial, and without the knowledge or consent of either party, is subversive of all rules which govern the admissibility of testimony, and of the right of a fair and impartial trial by jury." *Stewart* v. *Burlington & Missouri River R. R. Co.* 11 Iowa, 62, 64. In *McDaniels, Executor,* v. *McDaniels,* 40 Vt. 363, 375, which was a petition for a new trial on the ground of the misconduct of a part of the jurors in suffering themselves to be interviewed concerning the case out of court during the trial, by the agents and friends of the plaintiff, Steele, J., in delivering the opinion of the court, used the following vigorous language : " The friends of the plaintiff who thus approached the jury were guilty of a flagrant violation of the law ; and the jurors who suffered themselves to be so approached, though they may have meant no wrong, were guilty not only of a violation of the law, but also of the oath they had taken *to say nothing to any person about the business and matters in their charge but to their fellow-jurors, and to suffer no one to speak to them about the same but the court.* Both were liable to severe and summary punishment. The plaintiff, as he was unaware of these transactions, is not liable to punishment, but it does not follow from this that he can hold a verdict which is the result of a trial corrupted, though without his fault, by a shameful disregard of the familiar rules which are necessary to a decent administration of the law. The court below set the verdict aside, not as a punishment to any one, but in justice to themselves, as well as to the defendant, that the trial may be conducted fairly, so that the verdict, when finally rendered, may be entitled to the respect of both parties and the confidence of the court, as the result of a trial substantially according to law, and upon the evidence in court. It is true that a ver-

dict should not be set aside for every trifling error of law by the court, or for every trifling misconduct of a juror which occurs without the fault of the prevailing party, but it should be whenever the error or misconduct renders it reasonably doubtful whether the verdict has been legitimately procured."

In *Winslow* v. *Morrill*, 68 Me. 362, which was a motion for a new trial because of the misconduct of one of the jurors in privately visiting and examining the premises which were the subject of the suit, the court in granting the motion said: "It is now well settled that jurors must decide cases upon such evidence as is produced before them by the parties to the litigation, and that they cannot go in search of evidence privately, or act upon evidence thus obtained." To the same effect see, also, *Ortman* v. *U. P. R. R. Co.* 32 Kans. 419, 422, and cases cited; *Stampofski* v. *Steffens*, 79 Ill. 304; *Hayward* v. *Knapp*, 22 Minn. 5; *Bowler* v. *Inhabitants of Washington*, 62 Me. 302; *Thompson* v. *Mallett*, 2 Bay, 94; *Heffron* v. *Gallupe, supra;* Thompson on Trials, § 2605. Without considering, therefore, whether or not the verdict was against the evidence, we are clearly of the opinion that the defendant is entitled to a new trial.                    *Petition granted.*

Stephen A. Cooke, Jun., & Louis L. Angell, for plaintiff.

Francis Colwell & Walter H. Barney, for defendant.