## PRESCOTT J. WOODBURY *vs.* CITY OF ANOKA.

Submitted on briefs Jan. 6, 1893.  Decided Jan. 20, 1893.

**New Trial for Misconduct of the Jury.**

Where there is misconduct of jurors that may have had an influence on the verdict unfavorable to the defeated party, the verdict must be set aside, unless it appear, beyond doubt, that in fact it had no such effect.

**Same may have been Prejudicial.**

Certain misconduct of jurors *held* such that it may have had an influence unfavorable to the defeated party.

Appeal by plaintiff, Prescott J. Woodbury, from an order of the District Court of Anoka County, *Lochren,* J., made March 30, 1892, denying his motion for a new trial.

Plaintiff was a dry goods merchant at Anoka, and at seven o'clock in the evening of May 12, 1890, was going from his residence to his store, along the plank sidewalk on the south side of Main street, with Charles Woodbury and Charles Secombe. Between Second and Third Avenues, Secombe casually stepped upon the end of a loose plank in the walk. The other end ·flew up four or five inches and tripped plaintiff and caused him to fall forward upon his face, whereby he sustained personal injury. He brought this action against the city to recover damages. The issues were tried September 21, 1891, and resulted in a verdict for defendant. Plaintiff moved for a new trial upon a case containing all the evidence given, and rulings made, at the trial, and upon affidavits stating that during a recess in the trial two of the jurors had a conversation with the Street Commissioner, one of defendant's witnesses, at the place where the accident occurred, and remained there ten minutes examining the planks, stringers and nails in the sidewalk. They jumped upon the walk and tried it, and the Commissioner pointed out to the jurors different spots in the walk, but the deponents were too far away to distinguish what they said, but the deponents heard the words "spikes," "planks," "sidewalk," "stringers" and "sleepers." Plaintiff was not informed

of this conduct of the two jurors until after the verdict had been rendered, and the term of court had ended.

The trial court denied the motion, saying as to the misconduct of the jurors, that the sidewalk was one over which they and others going between the Court House and the business part of the town might pass over. That the place, from being described by witnesses, might be recognized and attract a passing attention, that observation was unavoidable. The evidence showed changes and repairs after the accident, and jurors knew, that its condition had not continued the same to the time of the trial. A request by one of the parties, that the jury be sent to view the place, had been discussed and denied for that reason. I cannot see that any observation of the place, by jurors, could affect their verdict. That the particular plank was loose when plaintiff was injured, and that his injury was caused by that defect, were matters clearly proven, and not disputed at the trial. All that was necessary in addition, to enable plaintiff to recover, was that he should show that the proper officers of the city had notice of such defect, a sufficient length of time before the injury, to have repaired it, using reasonable diligence; or that he should show a state of facts, from which the jurors might infer such notice. Nothing that jurors could see in the walk at the time of the trial, could affect their judgment of this question. See *Aldrich* v. *Wetmore,* *ante,* p. 164.

*George H. Wyman,* for appellant.

It is a fair presumption that the two jurors made their examination, to test the credibility of the various witnesses in the case, and it is impossible to say that such examination made in company with an officer of the city, and one of its witnesses at the trial, may not have had an influence on the minds of those jurors, adverse to the plaintiff. There can be no doubt but that it did influence them, and the acts of those jurors constituted such misconduct as to entitle plaintiff to a new trial. *Koehler* v. *Cleary,* 23 Minn. 325; *Snow* v. *Hardy,* 3 Minn. 77, (Gil. 35;) *Hayward* v. *Knapp,* 22 Minn. 5; *Williams* v. *McGrade,* 18 Minn. 82, (Gil. 65;) *State* v. *Prescott,* 7 N. H. 288; *Vanmeter* v. *Kitzmiller,* 5 W. Va. 380; *Bowler* v. *Inhabitants of Washington,* 62 Me. 302.

*Everett Hammons,* for respondent, submitted the point as to the misconduct of the jurors, upon the statement of the trial court, on refusing a new trial.

GILFILLAN, C. J.    Action for an injury to the person, caused by a loose plank in a plank sidewalk, alleged to have become and continued loose and dangerous through the negligence of defendant.    After a verdict for defendant, plaintiff moved for a new trial on several grounds, including misconduct of two of the jurors, which is the only one we need consider.    The injury occurred May 12, 1890. The trial was had September 21, 1891.    It appeared clearly enough that the plank was loose and dangerous, and the only real controversy was as to the negligence of the defendant, which depended on notice to it of the condition of the plank, and its neglect to repair. There was no evidence of notice, except as the jury might infer it from the condition of that part of the sidewalk for a considerable time before the injury, and as to that the evidence was such that the jury could find either way.    It appears that during the trial the court denied a request that the jury take a view of that part of the sidewalk.    The alleged misconduct of the two jurors consisted in their making an examination notwithstanding the refusal of the court. The affidavits of two persons were presented to prove it, one of whom swore that he saw the two jurors and one Manning, a witness for defendant, at the place where the injury occurred, holding an animated conversation, examining the sidewalk and stringers and spikes and nails, and jumping up and down on the sidewalk, and otherwise testing and examining it, and Manning pointing out different spots and localities upon it, for fully ten minutes.    The other person, in his affidavit, stated substantially the same facts, and that he overheard the jurors and Manning, during the examination, frequently using the words "spikes," "planks," "sidewalks," "stringers," and "sleepers," though he could not further distinguish what they were talking about.    Manning, in his affidavit used in opposition to the motion for a new trial, states that, seeing the two men, and not knowing at the time that they were jurors, he approached them, and said, in substance:    "This sidewalk was in pretty good

shape the day I saw it, before Woodbury got hurt," and one of the men said to him, "We are jurymen. We are not allowed to talk,"—and that there was no other conversation between him and them in reference to the sidewalk. His affidavit is evidently evasive, but, for the purposes of the motion, it may be taken to rebut the statements in the affidavits on the part of plaintiff indicating that he was conversing with the jurors in reference to the sidewalk at that time, beyond the remark above stated; but it did not deny that he and the jurors were there for the length of time, and examining and testing the sidewalk, as stated in the other affidavits. And it is significant that no affidavit of the jurors was produced, and no excuse given for not doing so. So that it must be taken as established that the jurors were doing what plaintiff's affidavit stated. That was misconduct, and, in view of the fact that the court had refused to let the jury see and examine the sidewalk, it must have been intentional.

Misconduct of jurors as a reason for setting aside the verdict was fully considered in *Koehler* v. *Cleary*, 23 Minn. 325, and the rule stated that "if it does not appear that the misconduct was occasioned by the prevailing party, or any one in his behalf, and if it does not indicate any improper bias in the jurors' minds, and the court cannot see that it either had or *might have had* an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside," and that all the moving party can be called on to show is "that the misconduct may have had an effect unfavorable to him." The party need not show that he was in fact prejudiced. That case concedes that, where the misconduct may have had an effect unfavorable to the defeated party, the other party may be permitted to show that in fact it did not have such effect. But that would have to appear very clearly,—so clearly as to leave no doubt as to the fact. When it may have had an unfavorable effect, it would be unsafe to allow any speculation whether in fact it did or not.

There can be no question that what was done by the two jurors may have had an influence on their minds unfavorable to plaintiff. It is manifest, from their making the examination, that they thought that by making it they could learn something proper for them to

consider in coming to a verdict. Perhaps they thought they could determine from it whether the witnesses for plaintiff, testifying that at the time of and before the injury the sidewalk was in general bad condition, or the witnesses for defendant, testifying the contrary, were to be believed. It is impossible to say it did not influence their minds against the plaintiff, and because of their misconduct there must be a new trial.

Order reversed.

(Opinion published 54 N. W. Rep. 187.)