ELLEN RUSH v. ST. PAUL CITY RAILWAY COMPANY.[1]

November 5, 1897.

Nos. 10,761—(77).

**Misconduct of Jury—Visiting Locus in Quo—Setting Aside the Verdict.**

> Where the gist of an action on trial is the condition of the locus in quo, or where a view of it will enable the jurors the better to determine the credibility of the witnesses, or any other disputed fact, if jurors, without the permission of the court or knowledge of the parties, examine the locality for the express purpose of acquiring such information, their verdict

[1] Reported in 72 N. W. 733.

will be set aside, unless it is clear that such misconduct could not have affected their verdict. This rule must be given a reasonable operation, and not applied where there is only a possibility that the result was influenced by the alleged misconduct.

### Same—New Trial.

*Held,* applying this rule, that a new trial must be granted in this case for the action of two of the jurors in making out of court independent and unauthorized examinations of the locus in quo.

### Affidavit of Juror—Competency.

The affidavit of a juror is not competent as to matters occurring in the jury room to impeach the verdict, but it is admissible for such purpose as to matters occurring outside of the jury room during the progress of the trial.

Appeal by plaintiff from an order of the district court for Ramsey county, Kelly, J., denying her motion for a new trial. Reversed.

*Stevens, O'Brien, Cole & Albrecht* and *John Cavanagh,* for appellant.

A juror's private investigation outside of court upon a matter affecting the controversy then before him may after verdict become cause for a new trial without regard to his intention, and it is to be presumed to have influenced the verdict in all cases, when it appears that it might have done so. Koehler v. Cleary, 23 Minn. 325; Aldrich v. Wetmore, 52 Minn. 164; Woodbury v. City, 52 Minn. 329; Peppercorn v. City, 89 Wis. 38; Harrington v. Worcester, 157 Mass. 579; Eastwood v. People, 3 Parker, Cr. Rep. 25.

The affidavit of a juror as to matters occurring outside the jury room is admissible to impeach the verdict. Peppercorn v. City, supra; Heffron v. Gallupe, 55 Me. 563; Woodward v. Leavitt, 107 Mass. 453; Roberts v. Hughes, 7 M. & W. 399.

*Munn & Thygeson,* for respondent.

The disposition of a motion for a new trial rests in the sound discretion of the trial court, and the court's ruling must stand except in the case of a manifest abuse of such discretion. Hicks v. Stone, 13 Minn. 398 (434); Svenson v. Chicago, 68 Minn. 14.

A view by a juror of the premises incident to the controversy should be held to be without prejudice. Bowman v. Western, 96 Iowa, 188; People v. Hope, 62 Cal. 291; McCormick v. City, 64 Mo.

App. 197; Pettibone v. Phelps, 13 Conn. 444; Carbon v. City, 95 Iowa, 524; 45 Central L. J. 51; Tully v. Fitchburg, 134 Mass. 499.

The presumption of right acting attaching to jurors ought not to be overcome by slight circumstances. State v. Bradley, 6 La. An. 554, 560; 2 Thompson, Trials, § 2616.

As to the admissibility of affidavits of jurors to impeach verdicts. State v. Stokely, 16 Minn. 249 (282); Bradt v. Rommel, 26 Minn. 505; State v. Lentz, 45 Minn. 177; 2 Thompson, Trials, § 2618.

START, C. J.

The only question involved in this appeal is whether the trial court erred in denying the plaintiff's motion for a new trial on the ground of the alleged misconduct of two of the jurors in visiting the locus in quo.

The plaintiff's minor son was injured, on the evening of June 10, 1896, at the intersection of University avenue and Marion street in the city of St. Paul. He was knocked down by a bicycle rider and thrown partly upon the street-car tracks, and was powerless to move. While he was in this position he was struck and injured by a street car, by the negligence of the defendant, as the plaintiff claims. This action was brought to recover the damages sustained by the boy by reason of such negligence.

Upon the trial there were at least two material questions upon which there was a sharp conflict in the evidence, which was such as to justify a finding in favor of either party on each of the questions. They were: (1) How far away from the boy was the car when he was thrown upon the track? (2) At what rate of speed was the car running?

The motion for a new trial was based upon the affidavits of Dr. Nippert and two jurors, J. Adam Bede, the foreman, and M. T. Haberman. The affidavit of Dr. Nippert was to the effect that at the request of juror Haberman he drove him to the place of the accident, that the juror stated that he wished to personally observe the locality and neighborhood and to note certain distances, and that he did so do. This juror in his affidavit admitted that he visited the locus in quo, that he might determine by his own personal observations what were the opportunities of Miss Smith and Mr. Du Bois, witnesses who had then testified on behalf of the defendant, for ob-

serving and seeing what they had testified to, and that he did make such observations. The affidavit of the foreman of the jury contained the following statement:

"During the trial of said case and before it was submitted to the jury for their deliberation, and during the trial thereof and before the closing arguments or charge of the court therein, affiant by himself and without the consent or knowledge of any of the attorneys or parties to said action, visited the scene of the accident for which recovery was sought in said action for the purpose of inspecting the locality and drew a map of the locality, which, as he remembers, he showed and explained to his fellow jurors, and also acquainted them with the fact of his visit to the premises and the impressions derived therefrom; that affiant made said investigation that he might the better understand and weigh the testimony given by the witnesses, and especially that he might the more justly determine, by the amount of settlement or density of population along the line of said railway in that vicinity, what would be a reasonable or lawful rate of speed for street cars to maintain at that point."

Each of the jurors stated that he was not aware that it was improper for him so to examine the locality, and in their rebutting affidavits each declares that such examination had no influence upon his mind in arriving at the verdict rendered, and stated facts tending in some measure to support the conclusion. This examination was made by the jurors during the progress of the trial, without the knowledge of the court or of either of the parties. It is not claimed that the defendant was guilty of any misconduct in the premises.

Assuming that the affidavits of the jurors, so far as they related to their action outside of the jury room, were admissible, we have the question whether their action was such misconduct as to require the setting aside of the verdict.

Not every unauthorized view of the locus in quo will require the setting aside of a verdict. Considerations of practical justice forbid it. It would be an injustice to deprive an innocent party of his verdict simply because there was a casual inspection of the premises by some of the jurors or because they were familiar with them. If verdicts were set aside for such reasons there would be no reasonable limits to litigation, especially in cities where the opportunities are great for jurors personally to view the locality of an accident under consideration. A caution in such cases by the trial court to

the jurors at the commencement of the trial not to examine the locality except by order of the court would not, in all cases, prevent such examination, although in the majority of cases it probably would, as no upright juror would disregard the injunction of the court. But, where the gist of the action is the character or condition of the locus in quo or where a view of it will enable the jurors the better to determine the credibility of the witnesses or any other disputed fact in the case, if in such a case jurors, without the permission of the court or knowledge of the parties, visit the locality for the express purpose of acquiring such information, their verdict will be set aside, unless it is clear that their misconduct could not and did not influence their verdict. It cannot be tolerated that jurors should go on a private search for evidence in such cases and make an inspection of their own accord, because the parties have no opportunity of meeting, explaining or rebutting evidence so obtained. This rule must be given a reasonable operation and not be applied where there is only a possibility that the result was influenced by the alleged misconduct; but it is to be applied where the court cannot determine with any reasonable certainty whether the result was affected or not. Koehler v. Cleary, 23 Minn. 325; Aldrich v. Wetmore, 52 Minn. 164, 53 N. W. 1072; Woodbury v. City, 52 Minn. 329, 54 N. W. 187. Now, in this case, the view of the jurors was not casual and incidental, but deliberately undertaken with the admitted purpose of obtaining information and evidence bearing directly upon material questions in the case. It was a private—that is, personal—search for evidence not given in court. Their view of the locality was unauthorized, and without the safeguards which the statute (G. S. 1894, § 5372) has provided in order to secure a perfectly fair view.

But it is urged by defendant that it is perfectly clear from the record that the result was not affected by the misconduct of the jurors, because the map of the place where the accident occurred, introduced by the defendant and admitted to be correct, showed everything which an actual view of the place could disclose. The record does not sustain this contention. The map was not introduced in evidence until near the close of the evidence and after both jurors had examined the place of the accident. They obtained for

themselves the evidence they desired upon the questions which seemed to have troubled them, and necessarily must have formed some opinion from such evidence as to how the questions should be decided before the map was offered in evidence. Again, the map does not purport to give the obstructions, if any there were, or the location or size of the window from which the witness Smith saw the accident, as claimed by her, or the houses on any other street in the vicinity other than University avenue. The civil engineer who made the map testified in substance only that it was a correct diagram of the streets at Marion and University avenue, and that the distances marked thereon were ascertained by actual measurements and were correct. The juror Haberman admits that he went to the place for the purpose of determining by his own personal observations what were the opportunities of the witness for observing and seeing what she testified to in court as to the accident, and that he made such observations. That is, he sought and obtained by himself evidence to enable him to determine the credibility of the witness and weight to be given to her testimony for the defendant as to the distance the car was from the boy at the precise time he fell upon the track. The same suggestions apply to the juror Bede. He sought and obtained for himself evidence, that he might the better weigh the evidence given by the witnesses and more justly determine from the density of population in the vicinity of the accident (not on University avenue alone), what would be a reasonable rate of speed for the street cars to maintain at that point. The fact that the defendant, after the jurors had obtained this evidence for themselves, gave in evidence the map, and the further fact that the jurors state in their rebutting affidavits that their examination of the place of the accident had no influence upon them in arriving at a verdict, are not sufficient to enable any court to determine with any reasonable certainty whether the result was affected or not by their action. That they honestly believed that it was not cannot be doubted, but their minds may have been unconsciously affected by what they saw. There can be no question that what was done by the two jurors may have had an influence on their minds unfavorable to the plaintiff. Their avowed purpose in making the examination was to learn something proper for them to consider in coming to a verdict;

and, having obtained the information sought, it would be strange indeed if it did not have any influence upon their minds in reaching a verdict.

This brings us to the question of the admissibility of the affidavits of the jurors. It is the settled law of this state that the affidavits of jurors as to what transpired in the jury room cannot be received to impeach their verdict; hence so much of the affidavits of the jurors as relates to what took place in the jury room we have not considered. But the rule of public policy which excludes the testimony of jurors to impeach their verdict extends only to matters taking place during their retirement, and it is competent to impeach the verdict as to matters occurring outside of the jury room during the progress of the trial. 2 Thompson, Trials, § 2619; Peppercorn v. City, 89 Wis. 38; Heffron v. Gallupe, 55 Me. 563; Mattox v. U. S., 146 U. S. 140, 13 Sup. Ct. 50. The affidavits of the two jurors, to the extent we have considered them, were competent.

The order appealed from must be reversed, and a new trial granted.

So ordered.