ARTHUR P. PIERCE v. PATRICK BRENNAN and Others.[1]

June 7, 1901.

Nos. 12,602—(79).

**Affidavit of Juror.**

> Affidavits of jurors are admissible in reference to examinations, made outside of the jury room, of a location and instrumentalities, for the purpose of testing the credibility of witnesses.

**Misconduct of Juror.**

> When such examination is made at a different place, and with apparatus similar to but not the original, the same rule as to misconduct and prejudice will apply as when jurors visit the locus in quo.

**Same—New Trial.**

> In a personal injury action two jurors, without the knowledge of the court, visited a railroad yard, and examined a car and track not involved in the accident, for the purpose of testing the credibility of a witness. *Held* that, under the circumstances, the trial court was justified in granting a new trial on the ground of misconduct of the jurors.

Action in the district court for Ramsey county by plaintiff, as administrator of the estate of John J. Sharp, deceased, to recover $5,000 damages for the death of decedent. The case was tried before O. B. Lewis, J., and a jury, which rendered a verdict in favor of plaintiff against defendants, Archibald Guthrie and others, for $2,500. From an order granting a motion for a new trial, plaintiff appealed. Affirmed.

*Albert Johnson* and *A. T. Ankeny*, for appellant.

*Harris Richardson*, for respondents.

LEWIS, J.

The plaintiff, as administrator of the estate of John J. Sharp, deceased, recovered a verdict against defendants upon the ground that decedent came to his death by reason of an injury caused by defendants' negligence in running a construction train over a partially obstructed track. Application was made for a new trial in the court below, upon the ground of misconduct on the part of

[1] Reported in 86 N. W. 417.

two jurors, and plaintiff appeals to this court from an order granting a new trial upon that ground.

The affidavit of the juror Russell E. Van Kirk, in substance, sets forth that upon the trial one Hugh Graham, a witness for plaintiff, testified that he was riding on the construction train on the day it was returning from the place of work, and, at the time John J. Sharp was killed by the derailment of the train, that the witness sat on the side of a flat car, at about the center, leaned over, and saw dump-car ties on the track between the rails. The affidavit further states that it was claimed by defendants upon the trial that a person sitting upon a flat car in the manner Graham testified could not look underneath the flat car and see between the rails of the track, and therefore he could not have seen the dump-car ties as stated, in proof of which defendants introduced in evidence a certain plat; that during the trial, and before the question was submitted to the jury, this juror went to the railroad yards in the city of St. Paul for the purpose of inspecting a flat car and testing the question; that he found a flat car, made the investigation, and satisfied himself as to the correctness of Graham's testimony. This affidavit was sworn to on August 27, 1900, before the attorney of one of the defendants, as notary public. On October 2, 1900, this juror made another affidavit, wherein he states that he signed the first affidavit at the request of one of defendants' attorneys; that he went to the railroad yard as therein mentioned, and inspected a car, but that he did not go there in search of, nor for the purpose of finding, any evidence in the action, and did not find any evidence; that, so far as he could recall, the witness Graham did not testify that he looked underneath the car, and there saw any ties or obstruction; and that the examination made by him had no effect of creating any prejudice in his mind against either party to the action, and did not in any manner influence his judgment; and it is further stated that the examination was made without the knowledge of any person connected with the case.

Another juror, by the name of Brings, made a similar affidavit, in which he states that during the trial one Graham testified that

on the day of the accident he was riding on the construction train, looked underneath the car, and saw dump-car ties between the rails, under the car; that defendants contended he could not have seen them, and that such condition did not exist; that on a certain day during the trial this juror had business at the railroad yards, and while there casually examined a flat car for the purpose of finding out if a person in the position testified to by Graham could have seen any ties beneath the car on the track and between the rails, and that from his examination he concluded that Graham could have seen the track and ties in the manner testified to by him; that this affiant made such examination in good faith, not knowing it was improper to do so. This affidavit was sworn to on August 30, 1900, before one of the attorneys for defendants. Brings also made a counter affidavit, on September 14, 1900, in which he states that he signed the former affidavit at the request of one of defendants' attorneys, and did not know its contents, except as stated to him by such attorney; that he went to the railroad yards on that occasion in connection with his own business; that he did not search for nor see the car described by the witness Graham, nor the same track, and that the car he saw was not moving, nor did he see any obstruction upon the track; that such examination did not prejudice him against either party to this action; that he examined such car without the knowledge of plaintiff, or any one acting in his behalf, and without the knowledge of any other person.

It has been settled by various decisions of this court that affidavits of jurors may be received to prove misconduct on their part in reference to what took place outside of the jury room. Koehler v. Cleary, 23 Minn. 325; Aldrich v. Wetmore, 52 Minn. 164, 53 N. W. 1072; Woodbury v. City of Anoka, 52 Minn. 329, 54 N. W. 187; Rush v. St. Paul City Ry. Co., 70 Minn. 5, 72 N. W. 733; Twaddle v. Mendenhall, 80 Minn. 177, 83 N. W. 135.

It is claimed that these affidavits do not state any definite facts, —merely conclusions,—and that, therefore, they do not constitute competent evidence of any tangible fact accomplished by the jurors. We cannot concur in this view. It is definitely stated in

both affidavits that the experiment was made with the view to test the credibility of the witness Graham, and these facts are not directly met or contradicted by the counter affidavits, which consist of declarations that the jurors did not make the examinations for the purpose of finding evidence; that they did not find any; and that the same made no impression upon their minds, and did not affect the result of their determination. Counter affidavits of this character are of little or no weight, and in some states such affidavits will not be received. Aldrich v. Wetmore and Woodbury v. City of Anoka, supra. Under the decisions of this court, it is clear that if the jurors had made these experiments at the place of the accident, and in connection with the car and track involved therein, a new trial would have been awarded upon the ground of misconduct. Therefore the only additional feature for our consideration is this: Is the rule changed by the fact that the jurors visited another track, in another locality, and made their investigations and tests with other cars? In the case of Koehler v. Cleary, supra (page 326), the court said:

"The proper rule in such cases we deem to be that, if it does not appear that the misconduct was occasioned by the prevailing party or any one in his behalf, and if it does not indicate any improper bias upon the jurors' minds, and the court cannot see that it either had, or might have had, an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside."

In the case of Rush v. St. Paul City Ry. Co., supra, we find the following language by the chief justice, with reference to a visit by certain jurors to the locus in quo:

"Not every unauthorized view of the locus in quo will require the setting aside of a verdict. Considerations of practical justice forbid it. It would be an injustice to deprive an innocent party of his verdict simply because there was a casual inspection of the premises by some of the jurors, or because they were familiar with them. * * * But, where the gist of the action is the character or condition of the locus in quo, or where a view of it will enable the jurors the better to determine the credibility of the witnesses or any other disputed fact in the case, if in such a case jurors, without the permission of the court or knowledge of the parties, visit the locality for the express purpose of acquiring such information, their verdict will be set aside, unless it is clear that their

misconduct could not and did not influence their verdict. It cannot be tolerated that jurors should go on a private search for evidence in such cases, and make an inspection of their own accord, because the parties have no opportunity of meeting, explaining or rebutting evidence so obtained. This rule must be given a reasonable operation and not be applied where there is only a possibility that the result was influenced by the alleged misconduct; but it is to be applied where the court cannot determine, with any reasonable certainty, whether the result was affected or not."

If the proper administration of justice will not permit jurors, without the supervision of the court, to inspect the locus in quo, and make personal observations for the purpose of testing evidence and obtaining information, the same rule applies with equal force in a case like this, where the jurors assume, for the purposes of a test, that the instrumentalities were similar to those involved in the accident. The car examined may have been narrower or higher than the original car, and the view of the track more easily obtained. The examination was not a casual one,—that is, such as a person would make in the ordinary observations of his daily life, —but was made for a distinct purpose, and, according to the affidavits, such purpose was accomplished; for the jurors were convinced thereby that the witness Graham had spoken the truth. The effect is not dissipated because there may be a doubt as to just what the witness meant. The jurors put their interpretation upon his testimony, and satisfied themselves that it was true, and acted accordingly in arriving at a verdict. Without considering that part of the affidavits which states that the result of these examinations was communicated to the other jurors in the jury room, we are of the opinion that the trial court was justified in granting a new trial for the reasons stated.

Order affirmed.