Argued September 12; reversed October 22, 1935

SCHNEIDER *v.* MOE

(50 P. (2d) 577)

*Robert F. Maguire,* of Portland (Maguire, Shields & Morrison and Delmas R. Richmond, all of Portland, on the brief), for appellant.

*E. M. Morton,* of Portland (C. W. Kirk and J. O. Johnson, both of Portland, on the brief), for respondent.

RAND, J.  The plaintiff, a pedestrian, while walking on the north pedestrian lane crossing Union avenue at its intersection with Fremont street in the city of Portland, was struck and severely injured by an automobile driven by the minor son of the defendant. Traffic at this intersection on both streets is controlled by traffic lights.

Plaintiff recovered judgment against the defendant for the sum of $7,500 and defendant has appealed.

Upon the trial of the cause in the court below, one Dan Schmiedeberg, a witness for the defendant, testified that he was a part owner of a filling station located on the northeast corner of said intersection; that at the time of the accident he was standing, leaning on the back end of his car, right up against his air line, and talking to an employee; that he saw the plaintiff step off the curb on to the street; "he took probably two steps when I first happened to notice him and then I noticed him take six or eight real quick steps for a car to go behind him; he had stepped towards the center of the street, and as the car went behind him he faced north to the car that had passed him and kept on walking and took possibly two or three steps more and stepped right into the side of another car that was going north; and then he fell and I went in and called the ambulance and when I got back out the crowd had carried him to the curb, and things passed on, then I didn't know what happened". He also testified that at the time of the accident, the traffic was going north and south on Union avenue and that he did not notice the lights.

On cross-examination in an effort to impeach his testimony, Schmiedeberg was asked if he had not told a daughter of plaintiff at a time and place stated that he did' not see the accident and could not see it and

could not tell how the lights were at the time of the accident, and the witness denied ever having made such a statement.

On rebuttal, Mrs. Linda Boehi, the daughter of plaintiff, was called as a witness, and she testified that she asked Mr. Schmiedeberg if he had seen the accident and that he had said "no" and that she asked him how the lights were and he said that he heard the noise when plaintiff fell, and that he did not know whether the lights at that time were red or green.

■ On surrebuttal, defendant called Spencer Reeves and, after showing that he was the employee of Schmiedeberg with whom Schmiedeberg was talking at the time of the accident and that he himself did not see the accident because his back was turned, offered to prove by Reeves that Schmiedeberg at the time of the accident exclaimed: "The old man has been hit".

On objections of the plaintiff, the offer was denied in toto and the defendant was not permitted to show where Schmiedeberg was standing or anything said or done by him concurrently with the happening of the accident.

This action by the court was assigned as error. We think that this testimony was admissible. The exclamation by Schmiedeberg that "The old man has been hit", made at the instant of the happening of the accident, was not a narrative of a past transaction but was an involuntary exclamation and was admissible as a part of the res gestae. The exclusion of this evidence was more harmful to the defendant than would ordinarily be the case because of another circumstance connected with the trial which will now be stated.

■ It appears from the affidavits filed on the motion for a new trial, both for and against the motion, that L. K. Thompson, one of the jurors, during the trial

of the cause without the consent of the court and without the knowledge of either the plaintiff or the defendant, went to the filling station above referred to and made an independent examination of the premises in order to ascertain whether Schmiedeberg, if standing at the place testified to, could have seen the accident and, after the close of the testimony and during the time the jury was deliberating upon its verdict, informed two or three of the jurors, then deliberating upon their verdict, that Schmiedeberg could not have seen the accident if at the place testified to. The circumstances attendant upon Thompson's playing the part of a private detective while acting as a juror in the case is wholly unexplained under the record. What he did while at the filling station appears from the affidavit of William J. Hohl, as follows:

"* * * on the 28th day of November, 1934, I was working at my service station on the northeast corner of the intersection of NE Union Ave and Fremont St. in Portland, Ore; That about 7:30 a. m. a man drove up to my station and purchased two quarts of oil; that after the purchase this man stated he was a juror on a case which involved an accident that occurred at the intersection of Union Ave. and Fremont Street and stated he wanted to see the intersection and that there was some squabble about an air line and he wanted to see where it was located. He looked over the intersection and air line and then stated that one of the boys at my station had been a witness and asked where he was standing when he saw the accident. I pointed out to this man where my partner, Dan Schmiedeberg was standing at the time of the accident and he looked over the place near the airline where he was standing and the position of the car he was leaning against."

We think that when the actions of this juror had been disclosed to the trial court by the uncontradicted affidavits filed in support of the motion for a new trial

and no explanation or denial of this unwarranted conduct upon the part of one of the jurors had been made, the motion should have been granted, and its refusal by the trial court was an abuse of discretion.

In *Frank v. Matthiesen,* 115 Or. 349 (236 P. 754), the court quoted with approval an excerpt, which after stating that every unauthorized view of the locus in quo will not require the setting aside of a verdict, then said:

"* * * But, where the gist of the action is the character or condition of the locus in quo or where a view of it will enable the jurors the better to determine the credibility of the witnesses or any other disputed fact in the case, if in such a case, jurors, without the permission of the court or knowledge of the parties, visit the locality for the express purpose of acquiring such information, their verdict will be set aside, unless it is clear that their misconduct could not and did not influence their verdict. It can not be tolerated that jurors should go on a private search for evidence in such cases and make an inspection of their own accord, because the parties have no opportunity of meeting, explaining or rebutting evidence so obtained. This rule must be given a reasonable operation and not be applied where there is only a possibility that the result was influenced by the alleged misconduct; but it is to be applied where the court can not determine with any reasonable certainty whether the result was affected or not. Koehler v. Cleary, 23 Minn. 325; Aldrich v. Wetmore, 52 Minn. 164 (53 N. W. 1072); Woodbury v. City of Anoka, 52 Minn. 329 (54 N. W. 187)."

In *Woodbury v. City of Anoka,* 52 Minn. 329 (54 N. W. 187), where two jurors had visited the scene of the accident, the court said:

"There can be no question that what was done by the two jurors may have had an influence on their minds unfavorable to plaintiff. It is manifest, from their making the examination, that they thought that by mak-

ing it they could learn something proper for them to consider in coming to a verdict. Perhaps they thought they could determine from it whether the witnesses for plaintiff, testifying that at the time of and before the injury the sidewalk was in general bad condition, or the witnesses for defendant, testifying the contrary, were to be believed. It is impossible to say it did not influence their minds against the plaintiff, and because of their misconduct there must be a new trial.''

In *Skinner v. Cron*, 206 Iowa, 338 (220 N. W. 341), the court said:

''The only authority for a view of the premises by a jury is that which is contained in section 11496 of the Code. This section was not complied with. The purpose of the law in permitting the jury to view the premises under order of court, and in charge of a sworn officer, is to enable them to better understand the testimony of the witnesses respecting the same and more intelligently apply such testimony to the issues before them, and not to make them silent witnesses in the case. [Citing authorities.]

''We have held in cases where the matter in controversy is not in dispute, or where a view of the place by the jurors could not have any bearing upon the verdict, that the fact that jurors may have gone to the vicinity of the accident and made observations would not necessarily be prejudicial error. [Citing authorities.]

''But in this case, the environments at the intersection in question, and the fact as to whether or not the witnesses, particularly Mrs. Shrader, who testified for the defendant, could have seen what she testified that she did see, were quite material in the determination of the controversy between the plaintiff and the defendant. In this state of the record it can not be said that the view of the premises by the jurors is not prejudicial. A juror who visits the scene of the collision with the purpose in mind of ascertaining how the collision occurred, and whether the witnesses could have seen what they have testified they did see, can not

truthfully say how much he may or may not have been influenced by what he saw at the scene of the visitation. See Peppercorn v. City of Black River Falls, 89 Wis. 38, 61 N. W. 79, 46 Am. St. Rep. 818; Driscoll v. Gatcomb, 112 Me. 289, 92 Atl. 39, L. R. A. 1915B, 702; Floody v. Great Northern Railway Co., 102 Minn. 81, 112 N. W. 875, 1081; Harrington v. Worcester, 157 Mass. 579, 32 N. E. 955.''

In *Adams Laundry Machinery Co. v. Prunier*, 74 Misc. 529 (134 N. Y. Sup. 475), which was an action for the price of certain machinery and its installation, where one point in issue was whether it was so installed as to stand solid, it was held reversible error for the jurors to go to the premises without the knowledge of the parties and examine the machinery to see if it was bolted down and to talk to persons about it. In that case, the court quoted from *In Matter of Vanderbilt*, 127 App. Div. 408 (111 N. Y. S. 558), as follows:

''We cannot determine with certainty, nor is it necessary that we should, that the acts complained of did influence the verdict. It is sufficient cause for reversal if they are likely to do so.''

In *Luquer v. Bunnell*, 170 N. Y. Sup. 665, which was a personal injury case, the verdict was set aside and a new trial granted for the reason that during the trial some members of the jury had visited the place of the accident and inspected a hinge which plaintiff testified was, in his opinion, the cause of the fall. In that case the court said:

''For the reason that it is quite impossible to say with accuracy what effect, if any, such a visit by members of a jury during a trial may have upon the minds of the jury, in the consideration of questions which should properly be determined solely from the evidence adduced in court, the tendency of the courts is properly to conclude that the verdict may have been the result

of deductions improper in their influence upon the jury. The inspection by certain of the jurors of the place of the accident was without the knowledge of the attorneys herein, and was no doubt made without the slightest intention of wrongdoing; but it remains that those of the jury who made the visit had ocular evidence which was denied to their associates. It is important that every possible safeguard should be thrown around the conduct of a trial, to the end that no question can arise as to the fairness thereof.''

In *Garside v. The Ladd Watch Case Co.,* 17 R. I. 691 (24 Atl. 470), the court, speaking through Mr. Justice Tillinghast, said:

''It is evident that, in view of this conflicting testimony, the jurors were curious or anxious, perhaps both, to determine for themselves, by ocular demonstration, whether or not there was in fact a trap-door within a trap-door at said place, and what was the size and condition of the same, and that this was the main purpose of those who made the examination. It is natural to infer, also, that if, upon making such examination, they become satisfied that the plaintiff's witness was correct in his testimony upon that point, and that the defendant's witnesses were mistaken or perhaps falsifying upon said point, it would strongly tend in their minds to discredit the defendant's witnesses, not only as to their testimony upon this branch of the case, but also upon other branches as well, and thereby prejudice the defendant's side of the case. So that, even though, as contended by the counsel for the plaintiff, it is practically of little or no importance whether there was in fact a trap-door within a trap-door, as testified to by the plaintiff's witness, or only a single trap-door, as testified to by the defendant's witnesses, yet, as this fact was in dispute, the attempt to determine it for themselves by the jurors who viewed the premises, and in all probability for the rest of the panel also, by outside evidence, was certainly of a character calculated to, and probably did, affect the credibility of the witnesses called by the defendant. The conduct of the

jurors in thus obtaining evidence for themselves, which it may fairly be inferred affected to a greater or less degree their verdict in the case, is wholly inexcusable and highly reprehensible. They were sworn to give a true verdict in the case, according to law and the evidence given them. This means, as everybody knows, that the case is to be tried and decided solely upon the law and the evidence as given in the court, or under its immediate direction, and 'to permit them to take into consideration evidence not produced upon the trial, and without the knowledge or consent of either party, is subversive of all rules which govern the admissibility of testimony, and of the right of a fair and impartial trial by jury'. Stewart v. Burlington & Missouri River R. R. Co., 11 Iowa 62, 64.''

For other cases holding that an unauthorized view of the locus in quo for the purpose of enabling a juror to determine the credibility of a witness, or any other disputed fact in the case, vitiates the verdict and demands the granting of a new trial, see *Pierce v. Brennan*, 83 Minn. 422 (86 N. W. 417); *Winslow v. Morrill*, 68 Me. 362; *Curry v. Quait*, 100 Misc. 604 (166 N. Y. S. 367); *Driscoll v. Gatcomb*, 112 Me. 289 (92 Atl. 39, L. R. A. 1915B, 702); *Morrow v. Dotts*, 208 App. Div. 788 (203 N. Y. S. 382); *Kelley v. Adams County*, 113 Neb. 377 (203 N. W. 544); *Peppercorn v. City of Black River Falls*, 89 Wis. 38 (61 N. W. 79, 46 Am. St. Rep. 818); and *Losey v. Creamer*, 45 Ohio App. 356 (187 N. E. 197). In the last case cited, the court said:

''This situation invokes the rule that where the misconduct may have been prejudicial, and it can not be ascertained that prejudice did not result, prejudice will be presumed. This rule is a salutary one. Verdicts ought not be tainted by wrongdoing where injury may have resulted.''

The contention that the misconduct of a juror in making an unauthorized view of the locus in quo for the

purpose of determining the credibility of a witness, or any other disputed fact in the case, can not be shown by the affidavit of such juror, can not be sustained. As was said in *Litz v. Harman*, 151 Va. 363 (144 S. E. 477):

"This rule [that affidavits of jurors are not admissible to impeach their own verdict], however, does not dispose of this case. It does not prohibit the proof of an unauthorized view, or of other improper conduct of a juror during the time of the trial, outside of the jury room, the consequential impressions on his own mind thereby created which were communicated by him to the other jurymen without the knowledge of the parties, and for the purpose of influencing their verdict."

Again, in *Twaddle v. Mendenhall*, 80 Minn. 177 (83 N. W. 135), the court said:

"It is settled that misconduct of this nature [viewing premises] can be shown by the affidavits of the jurors themselves—an exception to the general rule in respect to jurors affidavits. It is also settled in this court that where the gist of the action as was the case here is the character or condition of the locus in quo, or where a view of it will enable the jurors to the better to determine the credibility of the witnesses or any other disputed fact in the case, if in such a case, the jurors, without the permission of the court or knowledge of the parties, visit the locality for the express purpose of acquiring such information, their verdict will be set aside unless it is clear that their conduct could not and did not influence their verdict."

The judgment, therefore, is reversed.

CAMPBELL, C. J., and BELT and BAILEY, JJ., concur.