Argued January 10, affirmed February 7, 1962

# WOLFE v. UNION PACIFIC RAILROAD COMPANY

### 368 P. 2d 622

*Ben T. Gray,* Portland, argued the cause and submitted a brief for appellant.

*W. J. Cosgrave,* Portland, argued the cause for respondent. With him on the brief were Randall B. Kester and Robert Batchelder, Portland.

Before McAllister, Chief Justice, and Sloan, O'Connell, Goodwin and Lusk, Justices.

## O'CONNELL, J.

This is an action to recover damages for personal injuries. The jury returned a verdict for plaintiff. Defendant moved for a new trial on the ground that one of the jurors, Sherman Olson, had visited the scene of the accident. The trial court granted the motion. Plaintiff appeals from the order granting a new trial. Defendant cross-appeals assigning as error the denial of its motions for nonsuit, directed verdict and judgment n.o.v.

The facts are as follows. On October 18, 1958, at approximately 8:45 a.m., plaintiff was driving his automobile in a westerly direction on N. E. Halsey street in Portland, Oregon. He decided to try to get onto the Banfield freeway which was north of and parallel to Halsey street. Plaintiff turned to the right off Halsey onto defendant's private road, mistakenly believing that the road was a public highway and that it ran directly to the Banfield freeway which could be seen from Halsey street. About one fourth of a mile north of Halsey defendant's road turned sharply to the left. At the point where the road turned there was a steep embankment. Plaintiff, while traveling about 40 to 50 miles per hour, drove off the road at the curve. His automobile landed 53 feet from the top of the embankment and finally came to rest 36

feet from the point at which it first struck the ground after leaving the roadway. On the morning of the accident it was raining hard and there was a heavy wind.

Some time in September, 1958, defendant placed a sign reading "No Trespassing Private Property Union Pacific Railroad" on its property north of Halsey street and east of the private roadway. The evidence as to the distance from the sign to the roadway and to Halsey street, and the size of the sign, was conflicting. Defendant's witness Meier testified that the sign was thirty inches wide and five feet long and that it was located twenty feet north of the shoulder of Halsey street and between the paved portion and shoulder of the private road. Plaintiff offered evidence to prove that the sign was smaller in size and that it was located farther from the roadway. The roadway was not otherwise marked with signs of any kind.

Some time after the date of the accident the roadway became a county road. The county placed a "Slow" sign and a "Sharp Curve" sign along the road and erected a barricade at the turn which plaintiff failed to negotiate.

The jury returned a verdict for the plaintiff. After the verdict was in it was learned that juror Olson had visited the scene of the accident. It was on this ground that the trial court ordered a new trial.

Plaintiff contends that Olson's unauthorized view of the premises was not prejudicial to defendant and that, therefore, there was no ground to support the order for a new trial.

It is the rule in this state that an unauthorized inspection of the locus in quo by a juror is ground for setting aside a verdict and granting a new trial unless

it is clear that the misconduct could not have influenced the verdict.[1]

■ In the present case Olson's investigation of the scene of the accident clearly could have influenced his judgment as a juror. Between the date of the accident and the evening on which Olson visited the scene of the accident various changes had been made on the premises. We have already referred to the fact that after the county acquired the road two warning signs ("Slow" and "Sharp Curve") were erected along the roadway. A barricade had been erected at the curve which plaintiff had failed to negotiate. According to one of defendant's witnesses the "Private Property" sign had been moved a considerable distance from its original location.

As a part of his investigation Olson attempted to measure the "Private Property" sign. In the proceedings conducted by the trial judge to determine the nature of Olson's inspection, the latter stated as follows:

"MR. OLSON: * * * I couldn't see much. I drove down the road and came back up to where there is a sign on the field and I stopped there and checked the sign which everyone had raised such a point of. The size of, and the sign appeared to me to be approximately two and a half feet.

"THE COURT: About how much?

"MR. OLSON: From my estimation, it appeared to be about two and a half feet in length and I couldn't believe that Mr. Meier was giving false

---

[1] Thomas v. Dad's Root Beer, Etc., 225 Or 166, 356 P2d 418 (1960); Eckel v. Breeze, 221 Or 572, 352 P2d 460 (1960); Schneider v. Moe, 151 Or 353, 50 P2d 577 (1935). But see Sanders v. Williams & Co., 155 Or 1, 62 P2d 260 (1936). The rule is recognized in Frank v. Matthiesen, 115 Or 349, 236 P 754 (1925) but the court found that the juror's view of the premises could not have been prejudicial because the evidence of changed circumstances had already been brought out in the trial.

testimony, either, so I got out of the car and went out to the sign and checked—didn't have a tape measure, but measured it with my hands. It was approximately between four and five feet in length. It's a big sign. It didn't appear as big as that. Then I drove back here, I mean, I drove home that night and came into court the next day."

The trial judge had previously expressed the opinion that the changes made in the premises after the accident were such that the jury should not be permitted to see them. This occurred at the opening of the case when plaintiff requested that the jury visit the scene of the accident. In denying the request the trial court stated:

"THE COURT: * * * One of the essential preconditions for a view would be no changes of any consequence. If there are none and were none in this case, I would say this view would serve some purpose to have the people get out there and look around and while it is no evidence to the jury, nevertheless, they could better evaluate the plaintiff's driving at that time and place. But, where there has been substantial change in the case, I think it would be error to allow the view. Counsel would not be able to offer evidence of subsequent corrective matter such as the placing of this barricade and yet the jury going out there would see a barricade there and wonder, 'why wasn't this done before? It probably had something to do with the accident.'

"As far as I know, it may or may not, but that would inject into the case something that could not legally be done. I will sustain the objection to the motion to view and allow an exception."

We believe that Olson's view of the premises could have influenced his judgment in favor of the plaintiff. Certainly plaintiff has not shown that there was a

manifest abuse of discretion in granting the motion for a new trial.[8]

Defendant has cross-appealed from the denial of defendant's motion for a judgment notwithstanding the verdict, asserting (1) that there was no evidence of negligence on defendant's part; (2) that as a matter of law defendant had no duty to plaintiff except to refrain from willful and wanton misconduct toward him, and (3) that plaintiff was contributorily negligent as a matter of law.

The gist of defendant's first two points in support of the cross-appeal is that plaintiff was a trespasser and, therefore, that defendant owed him no duty to maintain the premises in a reasonably safe condition.

It is plaintiff's theory that the private roadway was maintained by defendant in such a manner that defendant knew or should have known that others would regard the roadway as a public highway. The rule relied upon by plaintiff is stated in 2 Restatement, Torts § 367 (1934):

> "A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway, is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel."

3. The trial court deemed the foregoing rule to be applicable and submitted the case to the jury upon that assumption.[9] We think that the trial court was correct in doing so. The question of whether there

---

[8] Hillman v. North. Wasco Co. PUD, 213 Or 264, 323 P2d 664 (1958).

[9] In substance this rule was adopted in Arney, Gohn v. City of North Bend, 218 Or 471, 344 P2d 924 (1959) and Hise v. City of North Bend, 138 Or 150, 6 P2d 30 (1931).

was a tacit invitation to use the roadway as a part of the public highway was for the jury, assuming that there was evidence to support the conclusion. There was such evidence in this case. The jury could have found that the position of the "Private Property" sign would have led a reasonable man to believe that it was intended to designate only the private character of the defendant's ownership of the field adjoining the roadway and not the roadway itself. Thus it would have been reasonable for the jury to conclude that plaintiff and other motorists exercising reasonable judgment could have regarded the roadway as an integral part of the public highway system. If the jury did so believe, there was evidence from which it could have concluded that the failure to erect warning signs along the roadway or a barricade at the curve constituted negligent conduct. Nor can it be said that plaintiff was contributorily negligent as a matter of law. If the jury made the assumption that defendant had, by its conduct, represented to motorists that the private road was a public highway, the reasonableness of plaintiff's conduct would then be tested by the standard of conduct applicable to those who travel upon public highways. The jury could have found that one traveling on a public highway of a character similar to the one apparently subsumed by them in the present case, would be entitled to travel at a speed of 40 to 45 miles per hour in the absence of the usual highway traffic signs which warn motorists to reduce their speed and which indicate points of danger.

The motions for nonsuit, directed verdict and judgment n.o.v. were properly denied.

The order of the trial court granting a new trial is affirmed.