JAMES M. FONDA v. ST. PAUL CITY RAILWAY COMPANY.

August 1, 1899.

Nos. 11,646—(141).

**Negligence—Verdict Sustained by Evidence.**

Evidence considered, and *held* sufficient to justify the jury in finding that defendant's servants were negligent.

**Damages.**

Damages *held* not to be excessive.

**Practice—Evidence.**

Certain questions of practice and admissions of evidence considered and disposed of.

Action in the district court for Ramsey county to recover $50,000 for personal injuries. The case was tried before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $20,000; and from an order denying a motion for a new trial, defendant appealed. Affirmed.

*Munn & Thygeson,* for appellant.

*Stevens, O'Brien, Cole & Albrecht,* for respondent.

BUCK, J.

This action was brought to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant in operating its cars upon Seventh street, in the city of St. Paul, and when plaintiff was about to take passage on one of defendant's said cars. The injuries were serious, resulting in the loss of a portion of both legs. This case was before this court upon a former appeal, 71 Minn. 438, 74 N. W. 166, where the facts were quite fully examined, and the law applicable to the case stated, except such new questions as have arisen on the second trial and will be referred to further on in this opinion. In the former opin-

ion it was held that the evidence made a case for the jury. Upon a retrial the jury rendered a verdict in favor of the plaintiff for the sum of $20,000. The defendant appealed.

One of the principal questions raised by appellant upon the evidence is that the testimony of the plaintiff is so radically different, as given upon the retrial, from that given upon the former trial, that it now appears that plaintiff was guilty of such contributory negligence as necessarily to change the true conclusion upon the question, hence that plaintiff should stand charged with such negligence as to bar his recovery in this action. We do not agree with the defendant's contention in this respect. We are of the opinion that there is no substantial or material difference in the plaintiff's evidence. And this opinion is substantiated by the evidence which we herewith produce, and is as follows:

### Former Trial.

Just as I left the sidewalk to cross Seventh, I looked up and looked both ways. I see a car approaching from the east over a block away, and I also looked the other way towards the west, and there was a car coming from that way too; and I walked out on the rails, and my intention was, as I walked out there, to get across the rails before the east-bound car got down there (the car I was going to take). As I walked out on the track, that east-bound car got down there, and I couldn't cross it. So I hesitated a minute as the car got down by me. Then I started to walk around the tail end. Just as I started to walk around the tail end, and took a few steps, this west-bound car came along, and struck me, and knocked me down. * * * I signalled as I walked on to the track. I signalled the east-bound car for the car to stop, —waved my hands like that [indicating] to the motorman.

### Present Trial.

As I stepped off the sidewalk I looked up. I looked both ways. I see a car approaching from the east, about a block or more away. I also see a car coming from the west. That car was coming down nearly to the west crosswalk of Seventh street, —coming down the grade. I walked out there with the intention of getting on,—crossing those tracks to get on the south side to take my east-bound car. As I walked out there, I see I couldn't cross in front of the east-bound car, so I started to walk around the tail end of it. Just as I started to turn and took a few steps, this west-bound car came along and struck me, and knocked me down. * * *

Cross-Examination.

Q. When you saw the car coming from the west, was that as you left the curbstone also?

A. Yes, about the same time.

Q. How far away was that car?

A. Well, it was nearly down to the corner.

Q. It was nearly down to the corner?

A. To this side of the middle of the block nearly to the corner.

Q. Nearly to Seventh street?

A. Nearly to Walnut street.

Q. Well, how near Walnut street was it? Was it up to the west crosswalk?

A. I don't think it was quite.

Q. Was it nearly up to the west crosswalk?

A. It was down that way this side of the middle of the block along down the grade there.

Q. And how far west of Walnut street was it?

A. Well, I couldn't tell. I should imagine it was this side of the middle of the block.

Q. You mean it was about the middle of the block?

A. A little this side of the middle of the block.

Q. How near this side,—as near as you can fix it?

A. Well, I couldn't tell just how far. I know it was this side of the middle of the block. It was nearly down to the crosswalk.

Q. It was nearly down to the west crosswalk of Seventh street?

A. Yes, sir.

Q. You are sure about that?

A. Quite certain about it; yes, sir.

Cross-Examination.

Q. At the same time, or just as soon as you looked towards the east, you looked towards the west then, did you?

A. About the same time; yes, sir.

Q. And you saw the east-bound car as you have described it?

A. Coming down.

Q. You saw the east-bound car, I say, coming?

A. Yes, sir.

Q. Well, did you watch the east-bound car from that time on, or did you simply walk across the street?

A. I simply walked out there.

Q. Didn't you pay any further attention to the east-bound car?

A. No, sir; I walked out there, and I signalled for it to stop.

Upon the legal questions raised, so far as they appear and are discussed in the memorandum of the trial court, we adopt it as part of this opinion, as follows:

"The first point urged as error by defendant is the overruling of its objection to the question asked the witness Pierce at page 194

of the record. The fault in the question is alleged to be that the witness was asked to base his opinion of the distance within which the car could be stopped partly upon 'the other circumstances as you observed them there on that day.' It seems to me that, in view of the evidence that had already been given in the case, including the evidence given by this witness, and especially in view of the fact that there was no dispute as to what the circumstances were, this was not, in effect, 'leaving the witness to determine upon what he would base his testimony.' There was absolutely no conflict as to what the 'other circumstances were there on that day.' The only circumstance over which there was a dispute was the condition of the track,—whether it was good or bad; and the witness had testified that it was a good track. This disposes of the objections to the use of the words, 'in the condition the track then was,' as it is clear that a good track was meant. While it is unquestionably the rule that the opinion of an expert witness must be based upon the testimony in the case, or, in the absence of that, upon facts which are disclosed to the court and jury, in order that the jury may know the facts upon which the witness bases his opinion, and thereby be able to give it the proper weight, depending on their decision of whether the facts are true or false, yet this rule is not merely technical, and, where the reason for its strict application does not exist, it cannot be error to fail to apply it strictly. In this case, granting that the question is technically faulty, because it referred to the facts observed by the witness, instead of the facts disclosed by the testimony, it seems to me to be a certainty, in view of the lack of conflict as to what the facts were, that the facts observed by the witness were the identical facts shown by all the testimony to exist. This applies to the words, 'using all available means at hand.' What these means were was conceded and fully explained by the witness himself. Plaintiff's counsel make the point that the objection to this question was not sufficiently specific. In view of my holding that the question was proper, it is unnecessary to decide this point. But, while I should probably hold the objection sufficient, I cannot refrain from saying that, in my opinion, it would be a better rule to compel counsel to point out the objectionable words in a hypothetical question, or to indicate clearly their contention as to matters omitted. The object of counsel should not be to allow error to creep into the record, but rather to keep it out, by pointing out the error claimed clearly and specifically.

"The next point urged by defendant as error is the giving of plaintiff's second request: 'Street cars are, in the main, governed by the same rules as other vehicles on the street, and they are owners of only an equal right with the traveling public to use the street.' In Wilson v. Minneapolis St. Ry. Co., 74 Minn. 436, 77 N. W. 238, a case of a collision at a crossing between a vehicle and a street car, the supreme court held the giving of this instruction, unmodified, to be reversible error. It is to be noticed that in the

case at bar the collision was between a foot passenger and a car, but it is probable that the instruction given would be held error, except for the modification given in other portions of the charge, and particularly in defendant's eighth request, at page 244 of the record, which commenced as follows: 'Although street cars and foot passengers have equal rights at crossings, the fact that a pedestrian can either stop or turn his course instantly, and, by looking and listening, can, under ordinary circumstances, avoid being injured by an approaching car, while the car cannot change its course,' etc. This request not only supplied the proper modification of the rule given in the objectionable request, but supplied it in defendant's own language, and, indeed, the instruction shows that it is intended as a modification of the rule, as it expressly refers to the rule itself in the language, 'Although street cars and foot passengers have equal rights at crossings.' In the Wilson case there was no modification in any part of the court's charge, and the fact that the instruction was given without modification constituted the error. It is true, as a general proposition, that an erroneous instruction is not cured by a correct one given in another part of the charge; but the rule does not apply where the first instruction is correct as far as it goes, and the second instruction purports to be and is a completion and modification of the first. I am unable to perceive how the jury could have been misled, or the defendant prejudiced, by the giving of plaintiff's second request, in view of the giving of defendant's eighth request.

*     *     *     *     *     *     *

"Plaintiff's fourth request did not submit the question of wilful negligence to the jury. It was given, and I think properly given, on the issue of defendant's negligence in connection with defendant's fourth request; and the jury was specifically told that there was no evidence in the case that the motorman actually saw Fonda in time to have avoided the accident, that the question of wilful or wanton negligence was not in the case, and that plaintiff's contributory negligence would bar his recovery.

"Plaintiff's eighth request is in the language of the opinion of the supreme court on the former appeal. There was no error in giving it.

"The case of Morrow v. St. Paul City Ry. Co., 74 Minn. 480, 77 N. W. 303, disposes of the question as to a special verdict.

"Defendant contends that the damages are so excessive as to show that the jury was influenced by passion and prejudice. I do not think so. While the verdict is a large one, it must not be forgotten that the plaintiff's injuries were very serious; that he lost the use of both legs, and is a cripple for life; that he never will be able to work or enjoy life as others do; that he was nearly a year in the hospital, and suffered much pain; that his mental suffering, by reason of his condition, must have been, and must always be,

great. In view of these and other facts, I am unable to say that the verdict is so excessive as to warrant the assumption that the jury was influenced by passion or prejudice."

The defendant, by its fifth assignment of error, raises the question that the court erred in permitting plaintiff to show by the defendant's witness Wallin, the motorman on the train running west, that since the accident he had been taking care of the cars at the Rice street station. The court refused to let the plaintiff show that Wallin had not run any cars since the accident, but permitted plaintiff to ask the witness what he had been doing up at Rice street station, and he answered, "Taking care of the cars." But prior to this the plaintiff had shown by this witness, and without any objection on the part of the defendant, that ever since the accident Wallin had been working for the company on the Rice street station. This clearly proved that he was not running the cars during such time as motorman, and hence, whether he was taking care of the cars, or doing some other business there other than that of motorman, would be quite immaterial, or, if technically error, it would be a harmless one, as the main fact that he was no longer acting as motorman had already been fully proven without objection. It could not have misled the jury, and in no way injuriously affected the rights of the defendant.

As to the eighth, ninth, and tenth assignments of error, it sufficiently appears that all of the expert witnesses were familiar, from the evidence, with the locality, track, grade, cars, machinery, load, weather, and all other conditions to justify the court in permitting the questions to be put to the witnesses, and allowing them to answer. Of course, it was a matter for the trial judge to pass upon the qualifications of the expert witnesses, and his decision thereon was conclusive, unless clearly erroneous, as a matter of law, which is not claimed in this case. There was no contention but that the track was a good one and in good condition.

The only remaining question necessary for our determination is raised by the sixth assignment of error. Robertson, a witness called by the defendant, testified that he was driving a top wagon on the north side of Seventh street, going out West Seventh street, and about the corner of Walnut street (about 40 feet from the place

of the accident), when the accident occurred, and that the west-bound car was going at the rate of only seven or eight miles an hour, and that its bell was ringing.   In rebuttal, the plaintiff called as a witness one Murdock, who, after testifying that he was on the south side of Seventh street, going towards Walnut street, and only about 150 feet distant from the place of the accident when it occurred, and after his attention was called to the testimony of Robertson, was asked: "Now, did you see any team at that place (where Robertson located his team) as you walked along there?" To which he answered, "I didn't see any team." He was then asked, "Do you think you would have seen a team if there was one there?"   To this question the defendant objected, and, the objection being overruled, excepted.   The answer of the witness was: "I think I would; yes."   The admission of this evidence is assigned as error, upon the authority of Hathaway v. Brown, 22 Minn. 214. The witness on his cross-examination admitted that he was not paying any particular attention to what was going on on Seventh street; that he could not tell whether he was looking straight ahead or across the street; that he paid no particular attention—only in a general way—as to whether there was any team on Seventh street; that he saw a great many people on Seventh street at the time, although he did not recollect any particular one; that he could not say whether he saw any other teams on Seventh street or not.

It is often difficult to determine whether a question of the character of the one objected to calls for a fact or a mere opinion.   This often depends upon the particular facts of the case.   Hathaway v. Brown, whether decided rightly or not, seems to have become generally ignored by the bar of the state; for scores of cases have come to this court, especially personal injury cases, in which similar questions were asked, and answered without objection.   Indeed, this is the first time within our recollection when Hathaway v. Brown has been invoked as an authority.   There may be a distinction between testimony as to whether a witness would have heard a sound, and whether he would have seen an object.   See suggestions of Justice Cooley in Marcott v. Marquette, 49 Mich. 99, 13 N. W. 374.   But, without now considering or questioning the correct-

ness of Hathaway v. Brown, we are of the opinion that, under the circumstances, there was no error in admitting this question, which calls for a reversal.   It was a self-evident proposition that the witness would have seen the team and buggy, if they had been there, provided his attention had been at the time called to the matter, and his vision turned in that direction, for the purpose of ascertaining what the fact was.   But the force of his answer was entirely destroyed by his admissions on cross-examination.   In view of these admissions, his statement that he thought he would have seen the buggy, if it had been there, could not possibly have had any weight with, or effect upon, any intelligent jury.

Order affirmed.