M. C. STALLMAN v. J. C. SHEA.[1]

November 30, 1906.

Nos. 14,945—(57).

**Injury at Street Crossing.**

As respondent was rapidly crossing a public street she glanced up and down and observed the street clear of vehicles except a team approaching some distance to the right. The team was driven rapidly and struck respondent when she was almost across. The view was unobstructed and the collision could easily have been avoided had either party been on the

[1]Reported in 109 N. W. 824.

lookout. *Held*, the evidence was sufficient to justify the jury in finding that appellant was guilty of negligence and that respondent was not.

Action in the district court for Ramsey county to recover $3,050 for personal injuries. The case was tried before Hallam, J., and a jury, which rendered a verdict in favor of plaintiff for $288. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Thos. C. Daggett,* for appellant.

*C. D. & R. D. O'Brien,* for respondent.

LEWIS, J.

While respondent was crossing Sixth street in St. Paul, she was struck, knocked down, and injured by a horse and mail wagon driven by a servant of appellant. She recovered a verdict of $288. The case is brought to this court for review upon the ground that it conclusively appears from the evidence that appellant was not guilty of negligence, and that respondent was.

Respondent testified that, in the afternoon of September 9, 1905, she was walking in a southerly direction on the easterly side of Minnesota street, and as she started to cross Sixth street, about 2:30 p. m., she glanced up and down Sixth street and saw a single horse and wagon coming east, about the middle of the block west, but otherwise the street was clear; that she was a little over half way across when she was caught between the horse and wagon, the front wheel striking her in the back and she fell down between the horse and wagon so that the horse in backing a little struck her with his hoofs.

> Q. What was the first you knew of that horse and wagon striking you? A. Why, it struck me on the shoulder. I wasn't looking, because I gave him all the street to go down. I was in as great a hurry as he was, and I gave him the best part of the street to go down, so I was paying my attention to myself, and to get across as quick as I could, because I was in a great hurry. I had to be back at 2:45.

On cross-examination, respondent testified as follows:

> Q. When you were on the corner of Sixth street you noticed this mail wagon coming down in the other block? A. I saw the

wagon, yes, coming down in the other block. Q. How was it coming—was it driving fast, or how was it, how did it appear? A. I didn't pay any attention. I just measured the distance, thinking I could get across the street before they got down to me without interfering with me, because I was in very much of a hurry. * * * I just saw the team coming and measured the distance as I could observe them across the street as I thought, seeing the team up there, and I was walking very rapidly because I had to make my time.

In answer to the question whether or not the horse was moving at a rapid rate, she said:

No, sir; I couldn't tell you. * * * I just saw the team up there and expected to be able to get out of their way so they would have plenty of time to go down without interfering with me so that I didn't have to wait.

Upon further cross-examination the witness stated she thought there was another team near the mail wagon when she looked up the street, but that otherwise the street was clear of vehicles.

A witness for respondent, Charles H. Miller, a boy fifteen years of age, testified that he was standing on Sixth street in front of the Metropolitan Opera House; that he saw the horse and wagon coming rapidly down the street, and was looking directly at them when respondent and the team collided.

The driver testified that he was an experienced driver; that, as he was driving down Sixth street, near Minnesota, he noticed a woman crossing the street; that as he passed Minnesota, there was an automobile coming up on the north side and that she was watching that and didn't see him; that he turned out towards the curbing very suddenly and then as he got nearer her, she shot in under the side of the horse. He was corroborated by another witness who was with him at this time, and both testified that they were not going faster than four or five miles an hour.

There was no reasonable ground for controversy as to the negligence of appellant. The evidence was sufficient to indicate that the driver was going at a rapid rate, and that he could have avoided the accident

had he been on the lookout. His testimony to the effect that respondent was watching an automobile, and that he regulated his movements accordingly, was evidently not accepted by the jury as true.

In considering whether respondent was guilty of contributory negligence, we must accept as true the evidence most favorable to her, and assume that when she looked the mail wagon was approaching at a rapid rate, and was probably some distance to the west on Minnesota street. We must also assume there were no other vehicles in the vicinity and nothing to distract her attention and nothing to prevent her from glancing in the direction of the mail wagon and seeing its approach.

If the same rule were to be applied in this case as was applied in Hickey v. St. Paul City Ry. Co., 60 Minn. 119, 61 N. W. 893, Terien v. St. Paul City Ry. Co., 70 Minn. 532, 537, 73 N. W. 412, Russell v. Minneapolis St. Ry. Co., 83 Minn. 304, 86 N. W. 346, and Baly v. St. Paul City Ry. Co., 90 Minn. 39, 95 N. W. 757, respondent could not recover, and it is upon those cases appellant relies. However, there is a distinction in the degree of care required of travelers on a highway where both vehicles and pedestrians are upon an equal footing and have equal opportunities to control their movements, and cases where street cars are involved. Street cars are confined to a given space and the power to avoid accidents is limited to the control of the speed and the giving of signals. It is a reasonable rule which holds a person responsible for his own conduct, if, without stopping to look or listen, he attempts to cross a street in front of an approaching car. Such was the Baly case. In such a case the motoneer has a right to assume that the traveler will be reasonably careful to protect himself, up to the point at least where it becomes apparent that he is oblivious to his surroundings.

But, in a case like the one before us, the driver of a team has almost as complete control of his team as a pedestrian has of his movements. The relative rights of pedestrians and vehicles in a public highway are equal and reciprocal—one has no more rights than the other, and each is obliged to act with due regard to the movements of others entitled to be upon the street. Neither is called upon to anticipate negligence on the part of the other. It is no more the duty of a pedestrian to continually look out for approaching vehicles than it is the duty of drivers

to look out for pedestrians. No pedestrian has a right to pass over a public thoroughfare .without regard to approaching vehicles, nor has any vehicle a right to appropriate the public street for the purpose of transacting business without regard to its use by pedestrians.

The test to be applied in this case is the usual one: What would a person of ordinary prudence do under such circumstances? That is a question about which reasonable men might differ. An exceedingly cautious person would hesitate to cross a thoroughfare without keeping a continual lookout in every direction for teams, and another might look about and quickly pass judgment upon the safety of crossing and act immediately without looking again. It has seldom been held in cases of this kind that the mere fact of failure to look continually while crossing a public street constitutes negligence per se. It all depends upon the circumstances of each particular case.

If respondent's story is true, it is apparent that she judged, from the distance of the team when she saw it, that she had ample time to make the crossing, and relied to some extent upon the fact that the driver would take notice of her whereabouts. Under such circumstances it cannot be said, as a matter of law, that she was guilty of contributory negligence, and it became a question for the jury. Undhejem v. Hastings, 38 Minn. 485, 38 N. W. 488; Murphy v. Armstrong Transfer Co., 167 Mass. 199, 45 N. E. 43; Shapleigh v. Wyman, 134 Mass. 118; Stringer v. Frost, 116 Ind. 477, 19 N. E. 331, 2 L. R. A. 614, 9 Am St. 875.

Order affirmed.