## CHARLES JOHNSON v. HARRY G. YOUNG.[1]

December 11, 1914.

Nos. 18,866—(105).

**Impeachment of witness.**

1. Failure to lay a technically perfect foundation as regards time and place is not ground for rejecting testimony of prior contradictory statements made by a witness out of court, where it is clear that neither he nor the impeaching witness is misled thereby.

**Street car discharging passenger — motor vehicle — lookout by driver.**

2. G. S. 1913, § 2632, requiring operators of motor vehicles to slow down in approaching or passing a street car which has been stopped to allow passengers to alight or embark, and to stop if necessary for the safety of the public, was intended to create a zone of safety around and about the entrance of such car by placing the burden of the lookout upon the driver of the motor vehicle; and hence one alighting from a standing street car is not obliged to keep a lookout for automobiles, under penalty of being charged with contributory negligence if he fails to do so.

**Charge to jury.**

3. Instruction *held* erroneous as depriving plaintiff of the benefit of this statute, and also as introducing an irrelevant issue as to the duty to look out for vehicles in general.

**Taxing disbursements.**

4. Disbursement for printing paper book and appellant's brief taxed at 60 cents per page. In no case will a larger sum be allowed unless such expense has actually been incurred. [Reporter.]

[1] Reported in 149 N. W. 940.

Note.—As to the duty of the operator of an automobile near street cars, see notes in 38 L.R.A.(N.S.) 493; 42 L.R.A.(N.S.) 1184, and 51 L.R.A.(N.S.) 1003.

Action in the district court for Stearns county to recover $10,113 for personal injury received by plaintiff's minor son while alighting from a street car, by collision with defendant's automobile. The answer denied negligence on defendant's part and alleged that plaintiff's son not only contributed to, but proximately caused, the collision. The case was tried before Roeser, J., and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Reversed.

*Harry S. Locke,* for appellant.
*J. D. Sullivan,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages for personal injuries suffered by plaintiff's minor son Elmer, alleged to have been caused by defendant's negligent operation of an automobile. Defendant had a verdict. Plaintiff appealed from an order denying a new trial.

The accident happened near the crossing of an east and west street in St. Cloud, at about 8:10 p. m., July 2, 1913. Elmer, aged 19, and an acquaintance contemplated taking a westerly-bound street car running on this street, and as it appeared both walked out to the crossing, but before it arrived there the latter turned and went back without Elmer's knowledge. Defendant was then approaching from the east on the right side of the street, driving his automobile. The street car stopped a short distance beyond the crossing and several passengers alighted. Plaintiff claims his son immediately put one foot on the step of the standing car, but when, on looking backward, he observed his companion on the sidewalk, he turned and started to walk there and was immediately struck and run over by defendant's automobile, which he had not previously seen. Defendant admitted he was looking at the car and saw people getting off and on, and also the striking and injury of the boy near the crossing. He claimed, however, that his approach thereto was at a speed of not to exceed five miles an hour, with his machine under perfect control and decreasing speed. Further, that after all passengers desirous of so doing had apparently alighted and the car had started and moved a short distance westerly, and when his machine was 10 or

12 feet from the crossing, Elmer swung off the car backwards some 8 or 10 feet beyond the crossing, when he was struck and knocked down almost instantly; whereupon defendant stopped immediately before running over him, but not until the front wheel reached his right foot. Testimony was given to the effect that the boy was picked up six or seven feet from the crossing and about four feet from the street car. He admitted he could have seen the approaching automobile had he looked when turning around. The evidence, which would have warranted a finding of considerably higher speed than defendant claimed, was sharply conflicting, and made a case for the jury on the question of defendant's negligence but not of wilfulness. Whether plaintiff's or defendant's version of the accident was the true one was likewise for the jury.

1. One Huhn testified for defendant to the effect that he was a passenger on the street car and was standing on the vestibule when the accident happened, and that the car had not only then started, but had proceeded from 8 to 12 feet. On cross-examination he admitted having a conversation with one Knutsen on the following morning, in the latter's tailor shop, but denied that he then stated in substance that the street car was standing perfectly still when the accident occurred or that the front wheel of the automobile ran over Elmer's leg. Later plaintiff called Knutsen and interrogated him concerning these alleged statements, and after proving the holding of the conversation between the latter and Huhn on the day following the injury, but not the place where or the hour when it occurred, asked him in almost the identical language previously used if he had so stated. The court, however, sustained an objection thereto as "incompetent, irrelevant, immaterial, inadmissible, no foundation laid." This was error. The object of the rule requiring the attention of the witness to be first called to statements made out of court contradictory to his testimony before he can be contradicted, is that in fairness to him he should be afforded an opportunity to recollect and explain his former statement, if one was made. The record contains no intimation of any conversation between these persons concerning this matter at any other time or place, and evidently neither witness was misled as to the occasion. This testimony related to material

and important subjects, and its exclusion was a too technical application of the rule of impeachment. 3 Dunnell, Minn. Dig. § 10,351 (b); Jones, Ev. (1914) § 846; Wigmore, Ev. § 1029.

2. The court charged at defendant's request:

"The law requires that a person attempting to alight from or embark upon a street car use ordinary care. He must use his faculty of seeing and hearing and he must under the circumstances of this case be chargeable with notice that upon the evening when the accident occurred vehicles of different kinds, including automobiles, were liable to be passing upon the street where this accident occurred, and it was his duty under all the circumstances to keep a lookout for such vehicles for his own safety." This is assigned as error.

G. S. 1913, § 2632, provides:

"In approaching or passing a car of a street railway, which has been stopped to allow passengers to alight or embark, the operator of every motor vehicle shall slow down, and if it is necessary for the safety of the public, he shall bring said vehicle to a full stop not less than ten feet from said street car."

Before considering the instruction or the effect of the statute, it will be well to review shortly our holdings made prior to the passage of the latter.

Stillman v. Shea, 99 Minn. 422, 109 N. W. 824, involved an injury to plaintiff caused by a collision with a horse and wagon while she was crossing a street. The court said at pages 425, 426:

"In a case like the one before us, the driver of a team has almost as complete control of his team as a pedestrian has of his movements. The relative rights of pedestrians and vehicles in a public highway are equal and reciprocal—one has no more rights than the other, and each is obliged to act with due regard to the movements of others entitled to be upon the street. Neither is called upon to anticipate negligence on the part of the other. It is no more the duty of a pedestrian to continually look out for approaching vehicles than it is the duty of drivers to look out for pedestrians. No pedestrian has a right to pass over a public thoroughfare without regard to approaching vehicles, nor has any vehicle a right to appropriate the

127 M.—30.

public street for the purpose of transacting business without regard to its use by pedestrians."

In Arseneau v. Sweet, 106 Minn. 257, 119 N. W. 46, plaintiff was struck by defendant's automobile while she was in the act of boarding a street car. The court said at page 259:

"Respondent was in lawful possession of the street. She had a right to walk out from the curb to the car tracks, in anticipation of the approaching car, and, if she took a position in the street within three or four feet of the car tracks with the intention of boarding the approaching car, she was not required absolutely to keep a lookout for vehicles at that point. The law governing the conduct of foot passengers and vehicles in the public streets is well settled. Stallman v. Shea, 99 Minn. 422, 109 N. W. 824; Thies v. Thomas (Sup.) 77 N. Y. Supp. 276; Huddy, Laws of Automobiles, p. 58. Respondent had no exclusive right to the street for the purpose of boarding a street car. She was not entitled to take a position even three or four feet from the car tracks and remain oblivious to her surroundings. But she was not guilty of contributory negligence simply because she did not look and did not see or hear the approaching machine. Her attention was naturally concentrated on the street car, and she was entitled to assume that others would exercise due care with reference to her position."

This case was followed in Liebrecht v. Crandall, 110 Minn. 454, 456, 126 N. W. 69; and to the same effect see Johnson v. Scott, 119 Minn. 470, 474, 138 N. W. 694.

It is doubtful if the instruction could be sustained under these authorities; but in addition thereto we have the statute subsequently passed. The purpose of the latter was, by creating a zone of safety, to protect the many who use street cars as against the comparatively few who, in driving automobiles, might render ingress to and egress from the former dangerous. It modified the doctrine of reciprocal rights in the street in all cases falling within its terms, and obviates the necessity, if any theretofore existed, on the part of those boarding or leaving standing cars, of looking out for approaching automobiles. In such case they have the right to presume that persons

using so dangerous an agency will perform their duty and obey the statute, and, in the absence of reasonable ground to think otherwise, they are not guilty of negligence in assuming freedom from a danger which can come only from such violation. Whatever the rule may heretofore have been, the burden of the lookout is now upon the automobile driver, and the duty of the street-car passenger is diminished accordingly. Medlin v. Spazier, 23 Cal. App. 242, 137 Pac. 1078.

The instruction, therefore, cannot be sustained. In effect the jury were advised that, even under the view of the testimony most favorable to plaintiff, his son was obliged to "keep a lookout" for automobiles, which, as we have seen, is not the law, and also for other vehicles liable to be passing, though such were in nowise involved in the case, thus introducing an irrelevant issue likely to confuse and mislead the jury.

We find no other error.

Order reversed.

On January 5, 1915, the following opinion was filed:

PER CURIAM.

Appellant taxed, against respondent's objection, for printing the paper book and brief in this cause, 75 cents a page. For many years the practice has been to allow only 60 cents when the printing was done in the three large cities, and 75 cents in other cases. In no case will a larger sum be allowed, and these only when such expenses have actually been incurred.

The clerk is directed to reduce the amount allowed to 60 cents a page.