## EMMA GILL v. MINNEAPOLIS, ST. PAUL, ROCHESTER & DUBUQUE ELECTRIC TRACTION COMPANY.[1]

March 19, 1915.

Nos. 19,096—(286).

**Negligence toward trespasser after discovery of his peril.**
    1. One who, after discovering another, though he be a trespasser, in a position of peril, fails to exercise ordinary care to avoid injuring him, and because of such failure injury results, is liable to the one injured.

**Death by wrongful act.**
    2. Applying this rule it is *held* that the evidence was sufficient to charge the defendant with liability for the death of plaintiff's intestate, a trespasser on its right of way, run into and killed by one of its trains.

Action in the district court for Dakota county by the administratrix of the estate of Thomas Gill, deceased, to recover $2,995 for the death of her intestate. The case was tried before Johnson, J., who denied defendant's motion to dismiss the action, and a jury which returned a verdict for $1,500. From an order denying its

[1] Reported in 151 N. W. 896.

motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. H. Boutelle* and *R. T. Boardman,* for appellant.

*H. A. Loughran,* for respondent.

DIBELL, C.

Action by the plaintiff, administratrix of Thomas Gill, deceased, to recover damages caused by his death through the negligence of defendant. There was a verdict for the plaintiff. The defendant appeals from an order denying its alternative motion for judgment or a new trial.

1. It is the law of this state that one who, after discovering another, though he be a trespasser, in a position of peril, fails to exercise ordinary care to prevent the impending injury, and because of such failure injury results, is liable to the one injured. Anderson v. Minneapolis, St. P. & S. S. M. Ry. Co. 103 Minn. 224, 114 N. W. 1123, and cases cited. Failure to exercise ordinary care under such circumstances is sometimes termed wilful or wanton negligence. This may be an unfortunate use of words. It is criticised in the dissenting opinion in the case cited. The jury need not find an intentional or malicious injury, or a reckless or wanton disregard of those in peril. Negligence, under the circumstances stated, gives a right of recovery. It should be understood that we are not speaking of a situation where there is concurrent negligence of both parties concerned in the accident at the time of the injury.

2. Applying this rule, it was a question for the jury whether the defendant was liable for the death of the deceased.

The defendant operates an electric railroad which runs north and south through the plaintiff's farm. The right of way is a private one and is fenced. An east and west public highway crosses the railroad 150 feet north of the plaintiff's house, and the house is 71 feet westerly of the right of way which is 66 feet wide. The accident occurred 300 feet south of the highway.

On the day of his death plaintiff's intestate was on the east side of the right of way, driving a mother turkey and her brood from the east across the right of way to his home. He was a trespasser. He

was quite deaf. The defendant's train was approaching from the north at a speed of 35 miles per hour on a track straight for a distance of 3,000 feet. It struck and killed the deceased.

The motorman says that he saw the plaintiff's intestate driving the turkeys across when some 400 feet north of the place of the accident; that he sounded his whistle four or five times; that the deceased, who was then four or five feet from the track, looked up and towards him, stood there shooing the turkeys across, and that that was the last he saw of him at the time. The motor car struck the deceased on the right side of the head at the temple. Death was instantaneous. The motorman knew nothing of the accident until on his return trip a half hour or so later.

If the facts recited are true there can be no recovery, for the deceased looked up when the motorneer sounded the whistle, and under such circumstances the motorneer was justified in assuming that he would take care of himself.

The deceased's wife, the plaintiff, was in the second story of the farm house. She says that she saw the train coming about the time it rounded the curve 3,000 feet to the north of the public highway, and saw her husband trying to get the turkey and her brood across the track. Her testimony is that he was stooping over, his head close to the east rail, his back toward the north, helping the young turkeys which were a week or 10 days old across the easterly rail. Her testimony is that no whistle was sounded. There is no substantial corroboration of this.

No effort was made to stop the train or slacken speed. The motorman, according to his testimony, thought there was no danger requiring it. If the situation was such as he described there was none. If the situation was as the plaintiff described it was a question for the jury whether the motorman should not have made an attempt to stop the train or have slackened speed. It may be that he could not have stopped the train by the time it reached the place of the accident; but a slackening of speed and further signals might have avoided the accident.

So far as we can gather from the record the testimony of the motorman was frank and intelligent. The testimony of the plaintiff, whose

position for observing was not so good, contradicts it sufficiently to make the question for the jury. The jury found negligence, the trial court has approved its finding, and we cannot disturb it.

Order affirmed.

Schaller, J., took no part.