# WALTER H. NEWTON v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

July 8, 1932.

Nos. 28,708, 28,709.

[1]Reported in 243 N. W. 684.

440

*Mortimer H. Boutelle, William A. Tautges, B. W. Wilder,* and *Robert J. McDonald,* for appellant.

*Ralph T. Boardman* and *John F. Dulebohn,* for respondent.

HOLT, J.

Walter H. Newton brought these two actions against the Minneapolis Street Railway Company to recover damages, the main action

being one in behalf of his minor son, John Marshall Newton, for the loss of his right leg, run over by one of defendant's street cars on June 20, 1929. The other action is for damages Mr. Newton, the father, sustained in consequence of the son's injuries, such as surgical, medical, nurse, and hospital expenses and loss of services. Verdicts were returned in favor of defendant, and from the orders denying motions for a new trial plaintiff in each case appeals.

The two actions were tried together, and the appeals were submitted as one. We need only refer hereinafter to the action in behalf of the boy, John Marshall, who was nine years old at the time he met this sad misfortune. On the day mentioned, at about six o'clock in the afternoon, John Marshall was directed by his mother to go to a butcher shop and a grocery store on Hennepin avenue and Lake street for some meat and a few tomatoes. The boy lived on Calhoun boulevard, and the nearest route was east on Thirty-first street to Hennepin, then north a block to the stores mentioned. He went on his errand upon a bicycle, which he had been riding a couple of months. The bicycle was a man's size. The day was by most witnesses described as a bright afternoon, and the streets were dry. The records of the United States weather bureau showed that the afternoon was cloudy, but at that time of the year it has no significance as to vision two hours before sunset. It may be said that cloudy weather prevented the sun from dazzling the eyes of persons looking towards the west—the important direction as far as this accident is concerned. John Marshall got his meat and a paper bag of tomatoes, mounted his bicycle, grasping a package in each hand so as also to have hold of the handlebars, and proceeded south on Hennepin avenue along tracks of defendant which turn west on Thirty-first street. When he arrived at Thirty-first street a westbound street car was discharging passengers, and the boy undertook to go around the car on its left side.

From here on the testimony is in conflict as to the relative position of the boy and the street car and the place of first contact with the car. The boy and some of plaintiff's witnesses testify that he passed around the street car while it was standing and that he had reached·

a distance of from 10 to 15 feet in front of it before it started; that the boy heard the street car start and, while trying to angle off the track to the north, the car struck him, rolling him under the fender and onto the rail so that one of the left wheels of the front truck severed his right leg above the knee. Plaintiff also introduced evidence that the boy was dragged some 30 feet before the car stopped. There is no dispute but that when the car stopped the boy's severed leg was directly against the rear left wheel of the front truck. The evidence is that the street car was backed a foot or so to release part of the leg.

Defendant's evidence was to the effect that the boy passed the rear end of the street car as it was starting and rode alongside in a wobbly fashion somewhat faster than the street car was traveling and ran into the car just behind the front vestibule or motorman's cab. The motorman testified that he saw a shadow out of the corner of his left eye coming as far in front as the rear left window in the vestibule or cab but could not make out what it was; that he immediately threw off the current, and as he did so he heard a scream and stopped the car. It was stopped with the front end some feet east of the alley running north and south in the block between Hennepin avenue and the next street west—some witnesses placed the front of the street car very near and others as far as 25 feet east of the alley. The distance from this alley to the west curb of Hennepin avenue is 135 feet. Thirty-first street is about 56 feet wide from curb to curb. From this bare outline it is readily seen that plaintiff's theory of recovery was that the boy John Marshall, while proceeding westerly, ahead of the street car, was run down through the negligence of the motorman in failing to keep a proper lookout so as to warn the boy and control the speed of the car. On the other hand, the defense was that the boy never reached the front of the car, but ran his bicycle into the car at the rear of the front vestibule.

The errors assigned as grounds for a new trial are upon rulings during the trial; the giving and the refusing to give certain instructions; and misconduct of certain jurors.

After the boy had testified that as he got 10 to 15 feet ahead of the standing street car he heard it start, the court, on objection, excluded evidence as to warning by bell or gong, not only from the boy but from other witnesses by whom plaintiff offered to prove that no warning was given. We think this was error. Failure to give warning was alleged in the complaint. If the boy was moving on in front of the car, as plaintiff's evidence tends to show, the speeding up of the car so that it was likely to run him down without warning him by the means available to the motorman was certainly a fact to be considered by the jury on the issue of defendant's negligence. The court evidently thought that, since the boy was aware that the car was moving only 10 or 15 feet behind, the failure to warn him of that fact was of no consequence. It must be remembered that we are dealing with a child, who might overestimate his ability to outdistance the car and reach safety before being overtaken. The failure to give a signal, if the boy was in the position he claims, would also be persuasive evidence that the motorman was not attending to his duties of keeping a vigilant lookout for persons in front of the car, for it is inconceivable that he would have proceeded, had he seen the boy, without giving the customary signals.

Counsel for defendant no doubt now realizes that he led the court into error, for he has had the argument of plaintiff's counsel to the jury made a part of the settled case and insists that, because of what was said by the court and counsel when this subject of warning was broached, no prejudice to plaintiff resulted. The moment plaintiff's counsel touched upon the matter of warning, defendant's counsel objected. Then this occurred:

The Court: "That issue is not in the case.

Mr. Tautges: "Well, there is no evidence that there was—

The Court: "There is no evidence that a gong was sounded, that is true.

Mr. Boardman: "That was not gone into—allowed to be gone into—and it is not within the issues. * * * It is not in the case. The court rules against it.

Mr. Tautges: "What I wanted to say to the jury was this, that under the circumstances, even though Marshall heard the car start up, that naturally he would assume that the motorman wouldn't run him down, that the motorman would not run into the bicycle without at least attempting to give some warning."

It is true, the court said there was no evidence that a gong was sounded. But no evidence was allowed on that subject though it was pleaded, and, under plaintiff's theory of the case, was material for him to prove. From what is above quoted, the jury could not escape the thought that plaintiff had wrongfully attempted to prove the absence of warning signals, that it was not an issue in the case, and that plaintiff's counsel wrongfully alluded to it. That absence of warning is material in cases of this sort is indicated in Gray v. St. Paul City Ry. Co. 87 Minn. 280, 91 N. W. 1106; Peterson v. Minneapolis St. Ry. Co. 90 Minn. 52, 95 N. W. 751; Howell v. G. N. Ry. Co. 125 Minn. 137, 145 N. W. 804, 805. The case last cited was where the engineer saw children running back and forth over the track. One child, a year and a half younger than John Marshall, was run over. Judge Bunn, writing the decision, says [125 Minn. 140]:

"Without much doubt the deceased also was aware of the train's approach. The ringing of bell or sounding of whistle was therefore unnecessary to inform them that the train was coming. But it does not follow that a special and distinctive warning whistle when the engine was near the crossing would not have sent the boys, including deceased, flying to places of safety."

If the gong or whistle on this street car was not sounded, plaintiff ought to have the opportunity of establishing that as a fact and to make use of that fact to persuade the jury to adopt any legitimate inference that might be drawn therefrom. To the contention that the failure to warn was immaterial under the facts defendant cites Teal v. St. Paul City Ry. Co. 96 Minn. 379, 104 N. W. 945; Bloomquist v. Minneapolis St. Ry. Co. 113 Minn. 12, 129 N. W. 130; Schrankel v. Minneapolis St. Ry. Co. 144 Minn. 465, 174 N. W. 820; Anderson v. Minneapolis St. Ry. Co. 150 Minn. 509, 185 N. W. 661.

The sounding of the gong was said to be a question for the jury in the Teal case, 96 Minn. 379, 104 N. W. 945. In the Bloomquist case, 113 Minn. 12, 129 N. W. 130, the appeal turned on the propriety of an instruction relating to wilful negligence; and in the decision it is stated that when the motorman discovered a collision was inevitable he was so busy trying to stop the car that he had no time to sound the gong, and its sounding would probably not have avoided the accident. In the Schrankel case, 144 Minn. 465, 174 N. W. 820, the plaintiff, following a street car, turned to the left to cross the track directly in front of a meeting street car. There was no time to warn. And in the Anderson case, 150 Minn. 509, 185 N. W. 661, the automobile came up behind the street car and was pinched against the curb when the street car turned to the right on the wye. The automobile was behind the motorman, who did not know of its presence. It was error to exclude the evidence that no warning by gong or bell was given.

There are three other assignments of error in respect to rulings on evidence. Over objection two witnesses were permitted to state that they were in a position to see the boy had he got in front of the street car. It was broad daylight. Each witness testified where he or she was. The jury had drawings and photographs of the location. Whether their view was obstructed or unobstructed was proper subject for inquiry, but their conclusion that they would have seen the boy had he been where he said he was was a conclusion and inadmissible. Hathaway v. Brown, 22 Minn. 214. But allowing the witnesses thus to express their opinion, after testifying positively that the boy was not there, would not, standing alone, be an error warranting a new trial. Fonda v. St. Paul City Ry. Co. 77 Minn. 336, 79 N. W. 1043. The situation was not such as to make the conclusion of the witnesses admissible under Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283.

Plaintiff undertook to establish that there was a practice of stopping the street cars to take on or let off passengers before the rear end had cleared the westerly curb on Hennepin avenue; but the court restricted the inquiry to where the car in question stopped.

However, on cross-examination of one of plaintiff's witnesses, the witness stated that the cars usually stopped as this car did with the rear end extending into Hennepin avenue. On account of this evidence, defendant in defense called a number of witnesses to establish that the practice was to stop so that the rear end was in line with the building line on the west side of Hennepin avenue. When plaintiff in rebuttal attempted to refute this testimony, the objection that it was not rebuttal was sustained. While this on the face of things may seem unfair to plaintiff, still plaintiff brought this about by not objecting to the evidence defendant offered of the usual practice. Aside from the right of either party to prove the usual stopping point, we think the precise place where this car stopped had so little bearing upon the accident that the excluded evidence could not have materially aided plaintiff.

Wold, who testified for defendant that the boy ran into the car, was the object of a severe attack from plaintiff. By an employer, for whom Wold had worked a few months, plaintiff sought to show that Wold's reputation for truth and veracity was bad. The court held the foundation was insufficient. The court perhaps insisted on a better foundation than that ordinarily deemed sufficient; but the matter of foundation is so largely for the trial court that we do not interfere unless abuse of judicial discretion is apparent. While the ruling may be characterized as strict, we see no abuse of discretion.

Wold was a roomer in a rooming house conducted by one Bergman on Thirty-first street, opposite where the accident occurred. He testified he was sitting in his car at the south curb of Thirty-first street opposite where the boy lay when the street car came to a stop. On cross-examination Wold was asked whether or not the accident was not talked of at the rooming house after it happened, and he admitted there was some talk that night; that Bergman and others were present and that he did not tell them that he had seen the accident. Then this question was asked: "Now, as a matter of fact, you told Henry Bergman that you didn't see the accident, didn't you?" The answer was: "No, I didn't say any such thing." Afterwards Henry Bergman was called by plaintiff and this ques-

tion put to him: "Did Arnie Wold ever at any time say that he saw this accident?" A. "He told me that he didn't see it." This was stricken on the ground that no proper impeaching question had been asked Wold. This was error. The time, place, and person were sufficiently indicated so as to be fair to the witness; and his emphatic answer that he did not say any such thing to Bergman, as the latter said he did, pretty clearly discloses that the two persons had one and the same occasion in mind. Johnson v. Young, 127 Minn. 462, 149 N. W. 940; State v. Jensen, 151 Minn. 174, 186 N. W. 581; State v. Madden, 161 Minn. 132, 201 N. W. 297, indicate that the rule as to naming the time, place, and person should not be here rigidly applied where the witness Wold, sought to be impeached, was so positive that he did not tell Bergman what Bergman as positively said he did. See also 2 Wigmore, Ev. (2 ed.) §§ 1025-1029.

Errors are assigned upon the charge. Numerous requested instructions were incorporated in the charge as far as the court deemed them proper. The charge is severely attacked for not presenting clear-cut issues or the respective claims of the parties. There is some merit in this, for nowhere are the conflicting claims which the evidence of the two opposing parties tended to establish presented to the jury. But were this the only complaint it should not make for a new trial. The real issues of fact presented by the evidence were so clear-cut and the attorneys of each party so experienced and capable in the trial of personal injury cases that it is unbelievable that the jury did not fully comprehend the claim each party made as to what the evidence established. The argument of plaintiff's counsel is part of the record, and it thoroughly refutes the contention that the jury could be ignorant of plaintiff's claims as to the facts in respect to how the injury was received and the acts and omissions of both the boy and the motorman touching the cause thereof. However, this part leaves a somewhat objectionable feature in the otherwise clear and concise charge:

"It was contrary to a statutory regulation for John Marshall Newton to pass to the left of the street car on his bicycle. This

act on the part of the boy is evidence of negligence, and if you believe that such an act proximately contributed to cause the accident, then the plaintiff cannot recover. If you find that John Marshall Newton reached the position in front of the street car, and the motorman was negligent in the operation of his car at that time and place, and that such negligence was the proximate cause of the boy's injuries, then you must determine whether or not the boy exercised ordinary care for his own protection, taking into consideration his age and discretion."

Technically the instruction is correct. But was it as a whole applicable to the evidence as presented by the parties and not apt to mislead? On defendant's evidence the boy never reached the front of the street car. He ran into the corner of the car at the back part of the vestibule. The motorman had no chance to see him in time to do anything to avoid the accident. And defendant was entitled to an instruction that if the boy ran into the front left corner of the car a verdict should be returned in its favor. We also think the charge quoted misleading upon plaintiff's evidence. If the boy had got 10 to 15 feet in front of the car when it started, the fact that he had passed it on its left, in violation of the statute, could not be considered an act of negligence contributing to his injury. If in front of the car, it should not matter whether he came from the right or left. The court's attention was called to this at the conclusion of the charge, but a modification was denied and exception taken. We do not think the evidence presents a case either of wilful negligence of the motorman or one wherein the doctrine of "the last clear chance" is applicable. It is not necessary to consider any nice distinctions between wilful negligence and ordinary negligence. See Gill v. M. St. P. R. & D. E. T. Co. 129 Minn. 142, 151 N. W. 896; Anderson v. Minneapolis St. Ry. Co. 150 Minn. 509, 185 N. W. 661. According to defendant's theory of the case, there was not much applicability of the instruction that the motorman could assume that no one would attempt to cross the tracks from left to right in front of the car. This was not a crossing case.

Another ground for a new trial is misconduct of several jurors. Some went to the scene of the accident and viewed the situation. Others rode on street cars of similar type to the one in question, placing themselves in seats corresponding to those in which witnesses testified they sat, with a view to verifying the testimony of such witnesses. One also observed how the street cars, when stopping, cleared Hennepin avenue. The parts of the affidavits of the jurors which stated what use these jurors made in the jury room of the views had and the experiments made were properly stricken. There is not the slightest suggestion that defendant or its counsel or agents were cognizant of these misdoings of the jurors or that the transgressing jurors intended any wrong. That the jurors unwittingly violated the established rules of practice must be conceded. It is sufficient to cite Koehler v. Cleary, 23 Minn. 325; Aldrich v. Wetmore, 52 Minn. 164, 53 N. W. 1072; Woodbury v. City of Anoka, 52 Minn. 329, 54 N. W. 187; Rush v. St. Paul City Ry. Co. 70 Minn. 5, 72 N. W. 733; Pierce v. Brennan, 83 Minn. 422, 86 N. W. 417; Thoreson v. Quinn, 126 Minn. 48, 147 N. W. 716. But not every misconduct of this sort entitles the defeated party to a new trial. The Koehler case, 23 Minn. 325, however, throws the burden on the prevailing party to make it appear that no prejudice resulted to the other party. Mere viewing of the locus in quo, depicted by drawings and photographs before the jury, could hardly prejudice plaintiff, as the learned trial court rightly observed; and that part would come within Gunderson v. Minneapolis St. Ry. Co. 126 Minn. 168, 148 N. W. 61, and cases therein cited. But the trial court said nothing as to the experiment of the jurors verifying the testimony of certain witnesses. Neither the pictures nor the drawings of the car nor the evidence clearly demonstrate what the experiments must have shown. We think this the misconduct most likely to be prejudicial. But were there no other matters upon which to base a new trial, this court should defer to the opinion of the court below; for we realize how easily a defeated party can obtain affidavits of sympathizing and repentant jurors confessing their mistakes. Brown v. D. S. S. & A. Ry. Co. 147 Minn. 167, 179

N. W. 1003, and the cases therein cited; Honkomp v. Martin, 182 Minn. 404, 234 N. W. 638. It is evident that the Rush case, 70 Minn. 5, 72 N. W. 733, is not parallel to the case at bar as to the prejudice resulting from a juror's misconduct.

There is no merit in the contention that the verdicts are not justified by the evidence and therefore contrary to law. The issues of defendant's negligence and John Marshall's contributory negligence were for the jury upon this record. But for the errors discussed and taken together it cannot be held that plaintiff has had a fair trial.

The orders are reversed and a new trial granted.

STONE, J. (dissenting).

It is hard to conceive of an issue more sharply defined, more exclusively of fact and less of law, than that in this case. Not only are two opposing claims of fact diametrically opposed, but also they are so clear-cut and widely separated that there is no twilight zone of uncertainty between them. Neither has any penumbra to overlap that of the other.

For plaintiff the theory is that the unfortunate boy had gotten well in front of the street car which ran him down. For defendant. the claim is that accidentally he ran into the left side or left front of the car as he was attempting to pass it. It requires much less experience than most of us have had with jurors to know that if the jury had not wholly rejected plaintiff's claim they would have allowed recovery. Their general verdict for defendant is explainable only on the theory that they did reject plaintiff's claim and adopt that of defendant. The argument here, I think, has proceeded upon that hypothesis. Therefore it is an inescapable premise for whatever else should be considered on this appeal.

I agree that the boy's admission that he heard the car start behind him did not make inadmissible testimony of the failure of the motorman to warn by gong or whistle. I do not agree that there was error otherwise. The rulings on the attempts to introduce impeaching testimony may have been somewhat more strict than some of us think proper. Yet I think it should be held that they were within the discretion of the trial judge.

Plainly, young Newton, in passing the car on the left, violated the law and was guilty of negligence. But negligence, contributory negligence, and proximate cause were explained to the jury by succinct instructions which they could not have misunderstood. We must take it therefore that they would pay no attention to contributory negligence unless proximately a cause, or part of the cause, of the injury. As matter of plain sense, it seems to me that if the boy had gotten in front of the car and was there negligently run down, it would have made no difference in the determination of the issue by any trier of fact whether he came from left or right of the street car. Furthermore, if by any chance the youth was struck just as he passed in front of the car, his coming from the left was rather plainly and proximately a cause of his disaster.

I am especially opposed to the conclusion that the action of the jurors referred to, who "on their own" may have made some examination of the locus in quo, is either basis, or part of a basis, or even excuse, for a new trial. It is not suggested and cannot be guessed properly that what they did or anything they observed was prejudicial to a just result; and that, I submit, should be the sole criterion. Nothing about the corner had been changed when they saw it. Street car tracks, sidewalks, buildings, and other objects were just as they were at the time of the accident. A view of the premises by the jury was permissible. Any observer might have noted something which in a strict sense was prejudicial to either litigant. But, whatever it was, it was but simple truth. Hence we are reversing, in part and as far as the result is put upon the supposed misconduct of the jurors, because of their observation of truth rather than possible untruth.

If it be suggested that they may have drawn false inferences from what they saw, the answer must be that it is the privilege of jurors to draw false inferences just as it is the privilege of judges to draw wrong inferences, either of fact or law; and we are not immune from such error. We must admit that it is no unknown experience to find our consideration of a case here on appeal facilitated by what we happen to know of the facts of a given location.

The finality of decision by juries of issues of metropolitan litigation should not be nullified by the fact that some jurors may, and others must, be familiar with locations which necessarily become involved in and are more or less determinative of such issues. It would be less than human for jurors, in passing such locations, not to make some note of what they must see. If that is to be prevented, either they must be peremptorily told by the court to detour the place, if it happens to be on their regular route of travel, or they must be blindfolded if necessarily they must pass that way during the trial.

I agree, as already stated, that in one respect there was error. But I know of no rule which entitles a defeated litigant to a new trial because of mere error. We all know that thousands of new trials have been granted by appellate courts upon that ground, but I had supposed the practice was getting rather out of date. It was due to what long ago Dean Pound characterized as the "sporting theory of justice" arising from chronic exaggeration of the "common law contentious procedure." Pound, *The Causes of Popular Dissatisfaction with the Administration of Justice*, 40 Am. L. Rev. 729, 738. It was there well said that "the idea that procedure must of necessity be wholly contentious disfigures our judicial administration at every point. * * * It creates vested rights in errors of procedure, of the benefit whereof parties are not to be deprived." I submit that here, if the real substance of the whole record be examined rather than a few of its mere trimmings, a new trial cannot be granted without what Dean Wigmore has characterized "magnification of details" and "over-emphasis on errors," this latter bad habit being one which is properly put by the author at the "doors of the appellate courts." 1 Wigmore, Ev. (2 ed.) 130. It is useless for us to declare generally our recognition of the broad discretion of a trial judge in the conduct of a trial and at the same time to hold that it is "an abuse of discretion not to agree with the supreme court." Id. 122.

Whether the jury's decision of fact issues was correct is none of our affair as long as there is evidence to support it, and there is an abundance of such evidence. The point is that there has been

one fair and carefully conducted trial, each litigant having the aid of capable counsel who made the most of his evidence. In such circumstances there is no constitutional or other right to a second trial, and I think none should be granted.

WILSON, C. J. (dissenting).

I concur in the dissent of Mr. Justice Stone. In addition thereto I comment upon but one assignment of error.

Every witness may, under cross-examination, be asked whether he has made any former statement relative to the subject matter inconsistent with his testimony upon the trial. This is for the purpose of impeaching him by contradictory statements. When it is sought so to impeach a witness, it is the rule, in justice to the witness and to enable him to give his best recollection, to lay the proper foundation by first directing his attention to the time, place, and person, or other material facts connected with the supposed contradictory statements and giving him an opportunity to explain. The rule requiring the laying of the foundation for such impeachment is well established and followed in the trial of cases in Minnesota. The case of Johnson v. Young, 127 Minn. 462, 149 N. W. 940, is perhaps the strongest case in this court tending to a relaxation of this well established rule, but that case is distinguishable from this in that the foundation in that case was laid in examining the witness to be impeached and the purpose of the rule was met by calling the attention of the witness to be impeached to the time, place, and particular conversation; but when the other witness was called to testify that the witness to be impeached had made the particular statement which he denied having made, counsel neglected to show the place where or the hour when the conversation had occurred to which the impeaching witness testified. An objection was made to the question to the impeaching witness on the ground that no foundation was laid. This objection was sustained, and this court held it to be error. Johnson v. Young, 127 Minn. 462, 149 N. W. 940, may tend to support appellant's contention, but it is a very weak support. I do not think it at all controlling. The facts are not parallel. The particular facts in this case should

also be kept in mind. In the cross-examination of the witness Wold, called by defendant, he was asked:

Q. "Now, as a matter of fact, you told Henry Bergman that you didn't see the accident, didn't you?

A. "No, I didn't say any such thing.

Q. "What?

A. "No, I didn't say any such thing."

When the witness Bergman was called, apparently for the purpose of impeaching the witness Wold, this occurred:

Q. "Did Arnie Wold ever at any time say that he saw this accident?

A. "He told me that he didn't see it.

Q. "He told you he didn't see it?

A. "Yes, sir."

These answers were stricken out on motion for the reason that no foundation had been laid for impeachment. The point was that the question to Wold had never specified the time or place wherein it was going to be claimed that Wold had ever made such statement to Bergman. Under the well established rule of practice in the trial of cases the trial court was correct. Plaintiff's counsel might then have procured permission from the court to recall Wold to lay the necessary foundation. He did not ask for that. Plaintiff's counsel then made an offer to prove, by witness, that Arnie Wold told the witness that he did not see the accident. To this an objection was made that no impeaching question had been asked. The objection was sustained. Plaintiff's counsel then further offered to include that such statement was made a very short time after the occurrence of the accident. The same objection was made and sustained. The simple point was that Wold had never had his attention called to the time, manner, and place, and was not afforded the opportunity contemplated by the language and the spirit of the rule thoroughly to understand the claim and to have an opportunity of explaining any statement made. In my judgment the trial·court ruled correctly.