## J. MAURY DOVE CO. v. COOK.

Court of Appeals of District of Columbia.
Submitted April 4, 1929.   Decided
May 6, 1929.

No. 4755.

Leon Tobriner, Byron U. Graham, and Charles W. Arth, all of Washington, D. C., for appellant.

Walter C. Clephane and J. Wilmer Latimer, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a verdict and judgment for the plaintiff (appellee here) in a suit for damages sustained by being struck by defendant's truck while attempting to board a street car at a regular stopping place.

The action was based upon the following traffic regulation then in force in the District of Columbia: "When a street car has stopped, or is about to stop, for the purpose of taking on or discharging passengers, the driver of any vehicle which is being driven on the same street and in the same direction as such street car, and which has not as yet passed all doors of such street car or cars, shall bring his vehicle to a complete stop and shall remain standing until such street car has finished loading or unloading its passengers; Provided, That a vehicle which at the time such car stops, has not as yet passed the rear of such car, shall stop at a point eight feet from the rear of such car; Provided, however, that this restriction shall not apply where street car loading platforms or safety zones are established; in passing which, however, drivers shall exercise great caution."

The evidence for the plaintiff (here material) was substantially as follows: The accident occurred on February 8, 1926. Plaintiff then was 14 years old and a first-year student at Dunbar High School. School adjourned at 12:30. Plaintiff walked to the northwest corner of New Jersey avenue and N street to board a south-bound street car to her home in Anacostia. On reaching the corner, Rachael Hawkins, a schoolmate, joined her, and they stood on the corner for some time waiting for the car, plaintiff facing in one direction and her schoolmate in the other. Plaintiff heard the street car approaching the corner, but did not look in its direction, "but from the sound of it felt that it was about to stop. * * * She stepped off the curb and walked into the roadway, Rachael Hawkins walking behind her, and the next thing she knew she had been hit and knocked down by an automobile truck. * * * She was almost to the rear door of the street car when she was struck. She had been looking down the street but she saw the car when it stopped."

Rachael Hawkins testified that: "When she was in the street she first saw a truck coming. She was about half way from the curb to the car when she saw the truck was not going to stop and she turned and ran back to

the curb. The street car had stopped when the truck struck Dorothy (plaintiff)."

A Mr. Carson testified that at the time of the accident he was on the northwest corner of New Jersey avenue and N street; "that he looked up New Jersey Avenue and saw the street car and a Maury Dove Coal truck approaching the corner of N street, side by side; that the street car got ahead of the truck before the car stop was reached; the truck did not stop when the car stopped. Two girls were standing on the sidewalk at the car stop and as the car approached the corner, he saw the girls step into the street, Dorothy Cook preceding Rachael Hawkins, and also saw the truck strike Dorothy Cook and knock her down." After the truck had gone some distance, the driver of the truck jumped and ran.

Andrew Williams, passenger on the car, testified that "the street car had stopped when the girl was struck."

The motorman on the street car testified: "That the North West corner of New Jersey Avenue and N Street was a regular car stop and there was no safety zone nor loading platform there; that at the time the plaintiff, Dorothy Cook, was struck by the truck, the street car was just coming to a stop; * * *, that the truck passed by the street car whilst it was so coming to a stop; that after it struck the plaintiff, Dorothy Cook, it skidded in the snow and slush about eighteen feet before it came to a stop."

The conductor on the car testified that: "After the street car had stopped he was about to open the rear door for passengers when he saw the truck still coming from behind at a good pace and did not open the door because he thought it dangerous; heard a scream and then saw a colored girl lying in the middle of N street; truck had passed over her. Driver had abandoned truck in the middle of N Street."

At the close of plaintiff's evidence, counsel for the defendant stated that he was unable to produce any witnesses to the accident and had been unable to locate the driver of the truck, "who according to the evidence had jumped off the truck at the time of the accident and disappeared." Thereupon, the defendant prayed the court to instruct the jury as follows: "Whilst it is the duty of the driver of a vehicle going in the same direction of a street car, when such street car is coming to a stop or has stopped, to stop within eight feet of the rear of such street car, or to stop if it has not passed all the doors of the street car, yet it is the duty of one about to board a stopping street car and before leaving the sidewalk for that purpose to use reasonable care in ascertaining whether it is safe to cross the roadway for embarking. And if the jury find from the evidence that the plaintiff before leaving the sidewalk did not look or make any effort to ascertain whether it was safe for her to cross such roadway and that if she had looked or used reasonable care she would have seen the defendant's truck approaching and could thereby have avoided the accident, they will find for defendant."

The court declined to grant this prayer, and defendant excepted.

The sole question before us is whether under the facts of this case as disclosed by plaintiff's evidence, defendant not having pleaded contributory negligence, the question of contributory negligence should have been submitted to the jury. Where the question of contributory negligence is not raised by plea of defendant, it is the almost universal rule that the court may direct a verdict if plaintiff's evidence discloses contributory negligence as matter of law, but that if plaintiff's evidence merely tends to show contributory negligence the question is for the jury. Railroad Co. v. Carrington, 3 App. D. C. 101; Railroad Co. v. Webster, 6 App. D. C. 182; Dashields v. W. B. Moses & Sons, 35 App. D. C. 583, 588, 31 L. R. A. (N. S.) 380; Konig v. N.-C.-O. Ry., 36 Nev. 181, 209, 135 P. 141; Mellon v. Great Northern Ry. Co., 116 Minn. 449, 134 N. W. 116, Ann. Cas. 1913B, 843; Smith v. Ogden & N. W. R. Co., 33 Utah, 129, 136, 93 P. 185. See also 45 C. J. 1117, § 694; 20 R. C. L. 182, § 151. It logically follows that in the absence of a plea defendant cannot introduce additional evidence to show contributory negligence. Konig v. N.-C.-O. Ry., 36 Nev. 181, 209, 135 P. 141.

In our view the court in the present case properly refused to submit the question of contributory negligence to the jury. The application of the traffic regulation relied upon by plaintiff is not challenged. According to the evidence, plaintiff and Rachael Hawkins, as the street car approached this regular stopping place, stepped into the street, and plaintiff *"was almost to the rear door of the street car when she was struck."* Rachael Hawkins was about halfway from the curb to the street car when she saw that the truck was not going to stop. All save one witness testified that the street car had come to a stop before the truck passed it. That witness, the motorman, testified that "the street car was just coming to a stop" when the truck passed it.

Under the regulation it was the imperative duty of the truck driver, as he approached this car stop, not only to have his truck under control, but to stop it when he saw, or should have seen, that the street car had stopped or was "about to stop." The few seconds' delay to motorists incident to an observance of this sensible and humane regulation is of trivial importance when compared with the frightful consequences very liable to result from its nonobservance. It is a singular and regrettable fact that many persons, who in their ordinary relationships are scrupulously mindful of the safety of others, are prone while driving automobiles to disregard reasonable regulations designed for the protection of the public as well as themselves. It is therefore the duty of courts not only to uphold such reasonable regulations, but, in addition, so to construe them as to effectuate if possible their humane purpose. It is common knowledge that street cars are necessarily run on approximately schedule time. "Step lively, please," is a slogan not infrequently employed by street car conductors. Prospective passengers, therefore, seldom wait until a street car comes to a complete stop before walking into the street. It was to meet just such a situation that this regulation was promulgated. As observed in Sougstad v. Zils, 180 Wis. 464, 193 N. W. 656: "In order that street cars may operate efficiently, passengers are required to get off and on cars promptly. In doing so they cannot take much time to gaze up and down the street. They have a right to assume that automobile drivers will give them a reasonably safe space near the car in which they may stand with immunity from passing vehicles."

In Crombie v. O'Brien, 178 App. Div. 807, 165 N. Y. S. 858, the court said: "The plaintiff left the sidewalk with the intention of boarding a trolley car which had stopped for the purpose of taking on passengers, and when within eight feet of the car was run down by defendant's automobile. The defendant's car was in that place in violation of an ordinance of the city of New York, and the question is whether, under those circumstances, the plaintiff exercised due care in guarding against injury from the defendant's car entering the prohibited zone. The ordinance forbidding vehicles to move within eight feet of a trolley car standing for the purpose of receiving or discharging passengers, was enacted for the very purpose of preventing just such accidents as the one under consideration. It was passed in recognition of the fact that passengers leaving and entering cars have their attention so directed to this purpose that they can give but little attention to passing vehicles. * * * But I suggest that the rule is well settled that one may rely, in a measure at least, on the presumption that others will obey the law. * * * In fact, the ordinance was enacted to create a safety zone in order to enable passengers to enter it and give attention to mounting the steps of the standing car, without danger from approaching vehicles."

In Johnson v. Young, 127 Minn. 462, 149 N. W. 940, in considering a regulation similar to the present, the court said that its purpose "was, by creating a zone of safety, to protect the many who use street cars as against the comparatively few who, in driving automobiles, might render ingress to and egress from the former dangerous. It modified the doctrine of reciprocal rights in the street in all cases falling within its terms, and obviates the necessity, if any theretofore existed, on the part of those boarding or leaving standing cars, of looking out for approaching automobiles. In such case they have the right to presume that persons using so dangerous an agency will perform their duty and obey the statute, and, in the absence of reasonable ground to think otherwise, they are not guilty of negligence in assuming freedom from a danger which can come only from such violation. Whatever the rule may heretofore have been, the burden of the lookout is now upon the automobile driver, and the duty of the street-car passenger is diminished accordingly."

A similar regulation was involved in Brammer v. Percival, 133 Wash. 126, 233 P. 311, where the court said: "It will thus be seen that the question as to whether the street car had come to a stop at the time respondent was struck, or whether it was about to come to a stop, is immaterial so far as this action is concerned. Under either state of facts the ordinance required approaching automobiles to come to a stop."

In Zimmermann v. Mednikoff, 165 Wis. 333, 162 N. W. 349, the court said: "In considering this question of contributory negligence of the plaintiff, however, it must be determined under all the circumstances surrounding the situation, and one of those circumstances is that a person so situated has the right to presume that the defendant would comply with the law embodied in the statute and the ordinance requiring such a stop; in other words, that he is not required to anticipate that defendant is about to violate or is violating such provisions." See also 20 R. C. L. 117, 120; 29 Cyc. 516; 45 C. J. 954, § 512.

960

The basis for defendant's contention that the question of contributory negligence should have been submitted to the jury was the statement of plaintiff that she did not look in the direction of the approaching street car before stepping into the street. What would she have seen had she looked? The evidence is clear that the relative positions of the street car and truck would have warranted her in assuming that the truck driver would obey the traffic regulations and stop. Until the very moment of being struck she would have had no reason, under the evidence, to reach a different conclusion. To say that it is the duty of the driver of a motor vehicle to obey this regulation, and yet charge pedestrians with contributory negligence for assuming that drivers will obey it, is illogical and unreasonable. Of course, if the position of the approaching motor vehicle was such as to indicate that the provisions of this regulation would not be applicable, or, in other words, that it would not be incumbent on the driver to stop, a different situation would be presented; but the facts in the present case fall far short of presenting such a situation.

The judgment is affirmed, with costs.

Affirmed.